GLADYS INGRAM ABEL, APPELLANT, v. KENNETH INGRAM, RESPONDENT.*

In the Springfield Court of Appeals. Opinion filed February 17, 1930.

*Corpus Juris-Cyc References: Divorce, 19CJ, section 797, p. 344, n. 24; section 798, p. 345, n. 33; section 799, p. 345, n. 35; section 810, p. 351, n. 43; Parent and Child, 46CJ, section 11, p. 1228, n. 2.

*Cope & Hadsell* and *Hallett & Hallett* for appellant.

*O. O. Brown* for respondent.

COX, P. J.—Paintiff and defendant are the parents of a minor female child, one Anna Wayne Ingram, five years of age. A divorce had been granted the father and the custody of this child awarded to him. The plaintiff filed a motion asking the court to change the order as to the custody of the child and award the custody to her. After hearing the evidence the court refused to change the order and plaintiff appealed.

Plaintiff and defendant were married December 23, 1923. The child whose custody is in controversy here was born October 4, 1924. The parents had separated before the child was born. They were divorced by judgment of the circuit court of Cedar county at the March term, 1925. The suit for divorce was filed by plaintiff against defendant and he filed an answer and cross-bill. Plaintiff states that she was misled as to the time the case was to be tried and for that reason was not present at the trial. That, however, is not now material. Defendant secured a divorce on his cross-bill and was awarded the custody of the child. The child was, at that time, in the care and custody of defendant's parents, James Ingram and wife and is still there. Plaintiff filed this motion asking for the custody of the child on October 20, 1927. It was finally heard on January 29, 1929, and the motion denied.

At the trial, the parties were allowed to testify as to their conduct toward each other and the child from the time of their marriage to the date of the trial but as we understand the rule, the order of the court made at the time the divorce was granted must stand unless the facts have so changed since that time as to make it appear to now be to the best interest of the child to change it and we shall confine our consideration of the facts to what has occurred since the divorce decree was entered and the custody of the child awarded to the defendant.

Before passing to a review of the facts, however, we call attention to the fact that the trial court apparently proceeded upon the theory that the father was the natural guardian of this minor child and entitled to first consideration in passing upon the question of its custody.

This undoubtedly is the rule as between the father and an outside party or some relative other than the mother. [State ex rel. v. Ellison et al., 271 Mo. 416, 427, 196 S. W. 1140.]

The father is primarily liable for necessities for his offspring and by reason of that fact, there has been a disposition on the part of the courts generally to give the father first consideration in passing upon the question of custody of a child. That was once the rule in controversies between the father and mother. In an early case in this State where the contest was between the parents, to-wit, Lusk v. Lusk, 28 Mo. 91, decided in 1859, it is said on page 93: "As a general proposition, the father is the guardian of his children and entitled against all the world to their custody during their minority." It was held in the same case, however, that there is no absolute rule on the question but "the leading principle is to consult the good of the child rather than the gratification of the parents." In 1913 our Legislature enacted what is now sections 1813 and 1814, Revised Statutes 1919, which specifically provide that parents stand upon an equality as to the right to custody of the minor children. Since the enactment of that statute there can be no presumption indulged in favor of the father against the mother. That presumption only obtains in a controversy between a parent and some other person not so related to the child It does prevail and is still the rule as between either parent and grandparents or other relatives. [See State ex rel. v. Ellison, above cited.]

Passing now to a consideration of what has occurred since the divorce was granted and the custody of this child awarded to defendant, we find that at that time neither parent was in a position to properly care for this child themselves. The child had been taken by the father to the home of his parents and was being cared for by them. After the order awarding the custody of the child to the father, it was left with his parents and is still there. The father remarried in 1926 and has one child by that marriage. At the time of this trial he, with his present wife and child, were living in Kansas City, Kansas. He had not removed this child there but it was left by him with its grandparents and he testified that it was his intention to leave it there if she wanted to stay there. He is financially able to feed, clothe and educate the child. The plaintiff at the time of the divorce was living in Kansas City and had employment but was not able at that time to keep and care for the child. She was married to her present husband Albert W. Abel, July 14, 1927. He is a successful business man in Kansas City, Missouri. He and plaintiff are living in a good home in a good residential district and they are now well able to rear and educate this child. Mr. Abel has one child by a former marriage, a boy ten years old, and the family relations are pleasant and Mr. Abel testified that he is anxious for his wife to

have this child and bring it to their home to live and to be cared for and educated. The character of all these parties is good. The mother has always been deeply interested in her child and has visited it at various times before and since her last marriage and on these visits would take it some articles of clothing. The father has contributed money to its support also. Plaintiff testified that on her visits to see the child, she would be treated coldly by the child's grandparents and would never be allowed to take the child away from the house or to be alone with it and that until recently the child was always glad to see her but lately when she would go to see the child it would not come to her. The fact that the grandparents would not allow plaintiff to take the child away from the house might be accounted for from the fact that she at one time had undertaken to secure the child and take it from them. That explanation is not specifically given in the evidence in this case. The grandparents testified that they had not talked to the child about the mother wanting to take her away from them but said the child had heard them talking about it. The above outline covers the material facts in this case and there is no real conflict in the evidence.

It is always a tragedy in the life of a child when its parents separate and are divorced or live apart from each other. It is also impossible for the court to render any judgment fixing the legal right to the custody of a child without causing grief to some party interested in the child. That is especially true in a case like this where the grandparents have cared for and nurtured the child since it was a babe, but under the decisions of the Supreme Court, by which we are bound, one of which we have cited, the grandparents have no legal right to the continued custody of the child after its parents become able to care for it themselves, and, in this case, we cannot take into consideration the grief that will be felt by its fond grandparents if they are required to allow the child to be taken away. If this child is allowed to remain in the legal custody of the father it means that the actual custody will remain with the grandparents so that in realty this is a contest between the parental grandparents and the mother of this child. In that situation, under the authority of the decision of the Supreme Court heretofore cited, by which we are bound, the custody must go to the mother in the absence of proof that she is incompetent or unable to properly rear it and there is no evidence of that kind in this case. Further, in contests between parents for the custody of the child, the courts all hold that the age of the child is a very important matter to be considered and if the child, like this one, is of tender years, the courts all hold as we held in the cases of Ellis v. Johnson, 260 S. W. 1011, and Sanders v. Sanders, 14 S. W. (2d) 458, that such a child needs above all else, the tender love and affection of a mother and if all else be

equal, the child will be given to the custody of the mother. That is the case in this instance. This child is only five years of age. These grandparents are excellent people and fond of this child but that cannot, as the courts hold, take the place of a mother's love and permit them to take precedence over the mother in rearing and providing for the child. The father in this case, if allowed to retain the legal custody of this child does not expect to take it into his own home but expects to leave it with these grandparents. The mother will, if so permitted, take the child to her home and be its mother in fact and it will be constantly under her personal care and the child will secure all the advantages that come to a child reared, as it should be, in the home of its mother.

The future good of the child is to be the only end to be sought by us in reaching a conclusion in this case and while either parent is able financially to properly feed, clothe and educate this child, the mother can, and no doubt will, give it that which it needs vastly more than food and clothes, to-wit, the tender care and influence of a mother during the period of its growth and development into womanhood. We feel that under the absolute rules of law by which we are to be governed as applied to the facts developed in this case the custody of the child should be awarded to its mother and it will be so ordered.

There is no reason why these parents and the grandparents should not all be on friendly terms, and no reason why either should lose his or her interest in this child and should be permitted to visit it at all reasonable times. The grandparents are not by name parties to this action but we assume that if they desire to visit this child in a reasonable way, they will be permitted to do so.

The judgment is reversed and the cause remanded with directions to set aside the judgment entered and enter judgment awarding the custody of this child to the plaintiff, Gladys Ingram Abel, and provide in said judgment that the father shall be permitted to visit it at all reasonable times.

*Bailey* and *Smith, JJ.*, concur.