260 S.W.2d 770 (1953)
WILSON
v.
WILSON.
No. 28644.
St. Louis Court of Appeals. Missouri.
September 15, 1953.
*772 Roy Hamlin, Hannibal, for appellant.
Fuller, Ely & Hibbard, Elgin T. Fuller, Hannibal, for respondent.
ARONSON, Special Judge.
Plaintiff has appealed from an order and judgment entered on her motion to modify a decree of divorce, with respect to the custody of her daughter, Connie Bernice Wilson, now nine years of age.
Plaintiff, now Dorothy Himmel, was married to defendant Junior Lee Wilson on June 26, 1943; their only child, Connie, was born on March 23, 1944; they separated (according to her petition for divorce) in January 1945; she sued for divorce on March 19, 1945, by her aunt as next friend (she being 18 years of age then, 16 when married.) The grounds alleged in the petition were general indignities and cruelty, and plaintiff prayed that she be given the custody of Connie, then one year old, and that defendant be required to support said child. Defendant was represented by counsel and filed an answer, admitting the marriage, separation, and birth of child, but denying all else. He did not pray for custody of his daughter.
The divorce case was tried and decree entered on July 28, 1945. Plaintiff was found to be the injured and innocent party and entitled to a decree of divorce, which was granted to her; but as to custody, the decree recited that "the minor child born of this marriage is not to be rewarded [awarded] to either the plaintiff or defendant but shall remain in the custody of Mrs. Sussie [Susie] Selsor, the mother of defendant. Said child is not to be removed from the State of Missouri. Each parent shall have the right of reasonable visitation. Court retains the jurisdiction as to future custody of said child."
On January 16, 1952, plaintiff filed her motion to modify the decree. She alleged that at the time of the divorce she was eighteen years of age, had no permanent residence and was not financially able to look after her child; that since then she has married one John Himmel, who makes good wages in a gainful occupation; that they have a comfortable home and are able to support the child and her husband is willing to have the child in their home and that her remarriage and establishment of a home constitute a change of conditions since the rendition of the decree. It was further alleged that there was a change in the circumstances surrounding the child in that she had been removed from the jurisdiction without the consent, permission or knowledge of the court, and that she be lieves a modification of the decree to vest custody in her, the mother, would be for the best interest and welfare of the child. She prayed for full custody.
Plaintiff named both defendant and Susie Selsor as defendants in the caption of her motion, and each filed separate answers thereto. Plaintiff was probably in error in undertaking to make Mrs. Selsor a party to the motion, because only the original parties to the divorce suit are proper parties to a motion to modify a decree of divorce, and no other person, even a grandparent, can properly litigate a modification of a divorce decree. Jack v. Jack, 295 Mo. 128, 243 S. W. 314; Hupp v. Hupp, 238 Mo.App. 964, 194 S.W.2d 215; Schumacher v. Schumacher, Mo.App., 223 S.W.2d 841. However, no objection was raised to this procedure.
Susie Selsor in her answer admitted that she had been "granted" the custody of Connie in the decree, she being the paternal grandmother; also admitted that she and her husband reside in Illinois, and that Connie has at all times been in their custody, and alleged that plaintiff also resides in Illinois; and further alleged that she and her husband "have at all times maintained, supported, cared for and educated said child"; that they are greatly attached to Connie and love her as they do their own children; that the alleged changes of condition do not justify modification; that she believes it best for the welfare of the child not to change custody from her to plaintiff, and that until recently, plaintiff was a stranger to her daughter. She prayed that *773 there be no modification and that custody remain in her.
Defendant, by his answer, admitted the divorce decree, but denied generally the other allegations of plaintiff's motion and further alleged that the child is being well cared for by Susie Selsor and that it was to her best interest to remain in the custody of Mrs. Selsor. He prayed that there be no modification of the original decree "granting" custody to Susie Selsor. It is to be noted that he did not seek an award of custody to himself.
The issues on plaintiff's motion were tried on April 26, 1952. Upon the completion of the evidence and the submission of the cause, on the same day, the court entered its findings and judgment. The court found "there has been a material changed condition since the original decree in this cause," and it modified the decree as to custody so that "plaintiff shall have the custody of the said minor child, Connie Bernice Wilson, for the months of July and August of each year. The defendant, Junior Lee Wilson, shall have the custody of the child for the remainder of each year, except that during said time that defendant has the child, the plaintiff shall have the right to visit said child over the last Saturday in each of the months of November, January, March and May from 9:00 A.M. to 5:00 P.M. The Court retains jurisdiction of said child and of this cause and the same is subject to modification by this Court from time to time."
From this judgment of partial sustention of her motion to modify, plaintiff has appealed to this court, after unsuccessful motion for new trial and all other necessary procedural steps. Although the defendant and Mrs. Selsor were represented by counsel below (the same attorneys appearing for both), no brief has been filed in this court for respondent.
On appeal from an order or judgment modifying a decree of divorce, we must review the whole record as in cases of an equitable nature and decide the case on its merits, according to the interests of the child, having in mind a proper deference for the findings of the trial court on disputed questions of fact where matters of credibility of witnesses are involved. Rone v. Rone, Mo.App., 20 S.W.2d 545; Hawkins v. Thompson, Mo.App., 210 S.W.2d 747; Fago v. Fago, Mo.App., 250 S.W.2d 837. In other words, this appellate review is a trial de novo. Hensley v. Hensley, Mo. App., 233 S.W.2d 42; Hawkins v. Hawkins, Mo.App., 250 S.W.2d 817.
It would seem not amiss for any appellate court, in ruling a case such as this, to recall to mind what was said in a comparable situation by Trimble, J., in In re Krauthoff, 191 Mo.App. 149, 151, 177 S.W. 1112, loc. cit. 1113:
"Herein we are asked to exercise our jurisdiction as a court of chancery in the adjudication of an exceedingly difficult, embarrassing, and important question, one that affects the most sacred feelings and reaches the profoundest depths of the human heartwhich of two separated parents shall be awarded the custody of their child. It is an unwelcome task, fraught with heavy responsibility. In its performance, however careful and sympathetic we may be, we must walk with heavy tread into the very sanctum sanctorum of parental affection, and, laying hands upon the jewel there enshrined, make such disposition of it as, in our finite wisdom, its best interest may seem to require. It is a painful duty, from which every well-regulated mind must shrink, since its performance has to do, not only with the tender relations of parent and child, but involves the future course of a human life, and perhaps may have an influence upon the destiny of an immortal soul. One thought, however, affords some slight comfort, and that is that we are in no way responsible for the causes which have unhappily brought about the situation with which we are confronted. We are called upon to act, the heavy obligation is laid upon us, and we have no choice but to meet it. Let those whose hearts were wrung remember *774 this when, in their pain and tears, they realize the effect of this decree."
We are required to review the evidence. After the introduction of the original petition, answer and decree of divorce, the plaintiff, Dorothy Himmel, formerly Dorothy Wilson, testified that she and her husband live in an apartment in Chicago, four rooms and bath, one block from a public school. The owner of the building, who also lives there, has four children. There is a big yard, fenced. Age twenty-five then, she was eighteen when granted her divorce in Hannibal and was then under the care of a doctor, who had recommended surgery, which she could not afford. She did not then have a home. About two months previous to the divorce, the defendant, without prior notice, came to her aunt's house where she was staying and took the child Connie to his mother's, and so the child was actually with Mrs. Selsor when the decree was granted. Plaintiff then went to live with her sister in Chicago; twice a month she came back to Hannibal to see her child, for almost a year, until the Selsors and defendant moved to Kansas. She was not notified and did not know where the child was. In the summer of 1950 she learned that the child was in Moline, Illinois, and on Labor Day 1950, she and her husband went there and located the Selsors, although they had no address. They had to wait another day to see Connie, because she was then in Rock Island, Illinois, with another son of Mrs. Selsor, but then they visited her and the Selsors. While the child was in Hannibal she had regularly brought her gifts and clothes and whatever Mrs. Selsor said was needed. She loves her child "more than anything in the world." She and her husband have no other children and having had the recommended surgery, she cannot have any more. Her husband is a truck driver, regularly employed. They have been married since September 1947.
On cross-examination, plaintiff stated that she had not been back to see her child in Moline since Labor Day of 1950. She wanted to go down during the Christmas holidays of 1951, but Mrs. Selsor wrote and said she should not come then. Connie hardly knew her Labor Day 1950.
John Himmel, plaintiff's husband, age 25, a Navy veteran, testified that he is permanently employed as truck driver for a furniture moving concern and earns $400 per month. He was never married before he married plaintiff nearly five years ago. He "would love to have" plaintiff's daughter live in their home and can support her.
For defendants, Mrs. Edith Brasmer, neighbor of Mrs. Selsor in Moline, Illinois; Mrs. Ruth Mincer and Mr. Cecil Mincer of Davenport, Iowa, young former neighbors; Mr. Barney Wilson, defendant's grandfather; Mrs. Mary A. Webster, defendant's cousin, and Mrs. Alma Stone, sister of Mrs. Selsor, all gave testimony that Connie is well cared for in the Selsor home; that she is treated just the same as the Selsors' own children (ages 5, 9 and 12) and that she is happy. Also that the Selsors bear a good reputation and that they live in a reasonably good section of Moline. The Selsors show love and affection for Connie and she loves them. The Mincers, who were friends of defendant Junior Lee Wilson in particular, testified that "he seems to think very much of her and he treats her very nice," and that she loves him.
Junior Lee Wilson, the defendant, testified that he lives near Moline in Rock Island, Illinois, is now age 28, and is a truck driver for Poole Transfer Company. He is now married for the third time and has a son nine months old. (The second wife obtained a decree of divorce from him.) Connie was with his mother and stepfather when plaintiff sued him for divorce and has been ever since. They have fed, clothed and educated her. He was not in Moline when plaintiff came there in 1950, but was driving a car in a race that day. The Selsors take very good care of Connie and she is healthy and happy. Whenever he visits them, Connie shows her love for him and he loves her. Connie did not know plaintiff when he pointed her out in court. Connie did not want to visit with her mother in the courtroom. "Maybe" *775 he has been hostile to plaintiff in the child's presence for a long time. He knew of Mr. and Mrs. Selsor taking Connie to Kansas for about nine months and then to Moline, Illinois. He made no application to the court because the child was not awarded to him. He did not know whethed he authorized counsel who represented his mother to file a pleading for him.
Eva Wilson, age 19, defendant's present wife, testified that she and defendant were married in Arkansas on November 21, 1950, and had a son nine months old at the date of trial. They lived on Second Street and now on Seventh Street in Rock Island. The Selsors take good care of Connie and she loves them and calls Mrs. Selsor "Mom." Connie comes to defendant's house sometimes on week-ends. She loves defendant, her father, and he loves her.
It is noteworthy that not a word was asked or said about the living quarters of the defendant, nor about his ability to support Connie, or about his or his wife's willingness to have her live with them.
Homer Selsor, defendant's step-father, a carpenter for John Deere Plow Company, making $4,000 per year, owns his own home, which consists of two two-room cottages, 25 feet apart. One building has a kitchen and living room and the other smaller building has two bedrooms. He, his wife, his two daughters, his son and Connie all occupy the two bedrooms. There is no bathroom. Ever since plaintiff and defendant were divorced Connie has lived with him and his wife. They have fed, clothed and educated her and treated her as their own children were treated. She is affectionate toward them.
He said that plaintiff came back to Hannibal several times to visit Connie. They had no difficulty or quarrel with her. Then he obtained work in Kansas in February 1948 and later in Moline. He next saw plaintiff in Moline about Labor Day 1950. There was no quarrel, but he has not seen plaintiff since. Except as plaintiff has sent Connie a few dresses, he has provided for her all the time.
Susie Selsor, 46, defendant's mother, testified that she has had the custody of Connie ever since the divorce, and has taken proper care of her and loves her. After plaintiff visited her in Moline near Labor Day, 1950, plaintiff wrote her once and said she was coming down and she wrote plaintiff that they were going on their vacation and when they would be back. Plaintiff had come to see Connie before they moved from Hannibal and had sent Connie some clothing and sent some after the Moline visit. Connie is happy. She asked the court for the custody of the child.
When the family moved to Kansas, she did not notify the court, nor did she notify plaintiff.
The stenographic notes of the testimony at the trial of the divorce case were read in evidence. Mr. Hamlin appeared for plaintiff and Mr. Spaun for defendant. Plaintiff's aunt, Belva Schell, was her next friend. So far as pertinent here, plaintiff then had testified that she had no home and defendant's mother had the child and takes care of it; that her husband had not supported either her or the baby. She has "consented to let his mother have the child in her home and she has supported it, looked after it and maintained it." Defendant's attorney also said defendant consented that the child stay with his mother. She further testified that defendant gave her a beating which left a scar or two on her arm and that caused the separation. He gambled, drank and ran around. He did not work very steadily.
"Q. You are asking the court to protect your interest in this baby? A. Yes, sir. * * *
"Q. And you are satisfied at present, at least, to let the child stay there, because of your and your husband's inability to take care of it, make a go of your marriage and get along? A. That's right."
It appears to be in order to restate some of the well-recognized principles of law which are applicable in cases of this type.
*776 A parent's claim to custody, absent unfitness, must prevail over the claims of grandparents. Because the Kansas City Court of Appeals failed to give effect to the presumption "that the best interest of the child was to be in the custody of the parent," its opinion was quashed by the Supreme Court in State ex rel. Crockett v. Ellison, 271 Mo. 416, 196 S.W. 1140. See also In re Scarritt, 76 Mo. 565 and Weir v. Marley, 99 Mo. 484, 12 S.W. 798, 6 L.R.A. 672.
"In the absence of evidence to the contrary, the law presumes that the child's welfare will best be served by committing it to the custody of one or the other of its parents. The parents' right by nature and by law, to the custody of children, should never be denied, except for the most cogent reasons, and unless it is clearly shown that both the parents are unqualified." 27 C.J.S., Divorce, § 308c, p. 1169.
In Williams v. Williams, 240 Mo.App. 336, 342, 205 S.W.2d 949, 953, Judge Dew said: " * * * as against the world a parent has the primary right to the custody of his child, and * * * he is presumed to be fit and qualified for that natural privilege." See Cox v. Carapella, Mo.App., 246 S.W.2d 513.
The law presumes, until otherwise shown, that it is to the best interest of a child to be in the custody of his or her parent. Vance v. Vance, Mo.App., 203 S.W.2d 899, 901 (wherein this court reversed a judgment that plaintiff, father, an injured and innocent person, who was entitled to a divorce, was not a fit person to have custody of a child and ordered custody granted to him, rather than to maternal grandparents).
See also Hupp v. Hupp, 238 Mo.App. 964, 194 S.W.2d 215, 220; Ellis v. Johnson, 218 Mo.App. 272, 260 S.W. 1010, 1011; Edwards v. Engledorf, Mo.App., 192 S.W.2d 31, 33; McDevitt v. Morrison, Mo.App., 180 S.W.2d 608; Madigan v. Madigan, Mo. App., 260 S.W. 485; and Tines v. Tines, Mo.App., 216 S.W. 563. In both of the last two cited cases awards to grandparents were reversed.
Custody of children is usually awarded to the party who prevails in a divorce action, that is to the injured and innocent party. 27 C.J.S., Divorce, § 309, p. 1175. See Irvine v. Aust, Mo.App., 193 S.W.2d 336, 342. A child of tender years is usually awarded to the mother, especially if a daughter, 27 C.J.S., Divorce, § 309, p. 1173. Bell v. Catholic Charities, Mo.App., 170 S.W.2d 697, 699; Fite v. Fite, Mo.App., 196 S.W.2d 65.
In Wells v. Wells, Mo.App., 117 S.W.2d 700, 704, this court, in reversing an award of custody of a daughter to a father, and directing an award to the mother, said:
" * * * custody is usually awarded to the party that prevails in the suit for divorce. 19 C.J. 344, 345. And it is rare indeed that a mother adjudged by the divorce decree to be the innocent and injured party is deprived of the custody of a daughter of tender years. * * *
"In the present case the defendant's moral fitness to have the custody and control of her child is not questioned. Her good character is both proved by the evidence and admitted by the plaintiff. She is by the divorce decree adjudged to be the innocent and injured party. We can see no reason why the best interests of the child would not be as well subserved in her custody and control as in the custody and control of the father, whose conduct is responsible for the severance of the marriage bond. Indeed, we think that the welfare of the child would be best subserved in the custody and control of her mother. At her age, more perhaps than at any other, she needs the care and devotion of the mother. For this there is no substitute.
"What was said in Ellis v. Johnson, 218 Mo.App. 272, 260 S.W. 1010, is appropriate here, as follows (page 1012):
" `The child is of tender years, being but eight years of age, and it is well known by all men that no other love *777 is quite so tender, no other solicitude quite so deep, no other devotion quite so enduring as that of a mother. Generally, the love, solicitude, and devotion of a mother cannot be replaced by another, and is worth more to a child of tender years than all other things combined and it should not be deprived of the necessary and wholesome influences which spring from these characteristics of a mother if it can reasonably be avoided.' "
The latter quotation comes from a case involving an eight year old daughter, as here.
In Tuter v. Tuter, Mo.App., 120 S.W. 2d 203, 205, the trial court had modified a decree by giving custody of a girl to the father for five days per month for the benefit of grandparents. In the course of reversing that order, Judge Fulbright said: "There is but a twilight zone between a mother's love and the atmosphere of heaven, and all things being equal, no child should be deprived of that maternal influence unless it be shown there are special or extraordinary reasons for so doing."
In a habeas corpus proceeding, Tomlinson v. French Institute of Notre Dame De Sion, 232 Mo.App. 597, 601, 109 S.W.2d 73, 76, it was ruled:
"The law laid down by the courts of this state is, that as between the parents, no presumption can be indulged in favor of one as against the other, yet the custody of a child of tender years will be given to the mother as against the father; all else being equal. Abel v. Ingram, 223 Mo. App. 1087, 24 S.W.2d 1048.
"We cite the above principle by way of emphasizing the fact that the laws of this state recognize the sacredness of motherhood, and by its general policy says that she who goes to the brink of the grave and suffers the pains of childbirth is presumed to be the best custodian during the early period of the life of her child."
When modification of a decree as to custody of a child is sought there must be pleading and proof of changed conditions arising since the original decree, and then the modification will only be granted if in the best interests of the child. Armstrong v. Armstrong, Mo.App., 185 S.W.2d 845, 847, and other modification cases, supra. Section 452.120 RSMo 1949, V.A. M.S., directs that the welfare of the child must control.
Abel v. Ingram, 223 Mo.App. 1087, 24 S.W.2d 1048, has many features of remarkable similarity to the case at bar. However, there the decree of divorce was granted to the father and the custody of a young daughter was awarded to him. The child actually was in the care of the father's parents at the time of divorce and afterwards. Over two years later, the mother moved to modify the decree, asking custody of the child. The trial court denied the motion, but the Springfield Court of Appeals reversed this judgment and remanded the cause with directions to award custody to the mother. Cox, P. J., observed that at the time of the divorce neither parent was in a position to properly care for the child. The father had taken the child to the home of his parents before the decree and after custody was awarded to him, the little girl remained there. He remarried, had another child, and moved to Kansas City, Kansas, but did not take the child in question away from the home of her grandparents. While the mother could not care for the child at the time of the divorce, she later married again and became well able to provide for the child. The court said, 24 S.W.2d loc. cit. 1949-1950:
"It is always a tragedy in the life of a child when its parents separate and are divorced or live apart from each other. It is also impossible for the court to render any judgment fixing the legal right to the custody of a child without causing grief to some party interested in the child. That is especially true in a case like this, where the grandparents have cared for and nutured the child since it was a babe, but, under the decisions of the Supreme Court, by which we are bound, one of *778 which we have cited, the grandparents have no legal right to the continued custody of the child after its parents become able to care for it themselves, and, in this case, we cannot take into consideration the grief that will be felt by its fond grandparents if they are required to allow the child to be taken away. If this child is allowed to remain in the legal custody of the father, it means that the actual custody will remain with the grandparents, so that in reality this is a contest between the parental grandparents and the mother of this child. In that situation, under the authority of the decision of the Supreme Court heretofore cited, by which we are bound, the custody must go to the mother, in the absence of proof that she is incompetent or unable to properly rear it, and there is no evidence of that kind in this case. Further, in contests between parents for the custody of the child, the courts all hold that the age of the child is a very important matter to be considered, and if the child, like this one, is of tender years, the courts all hold, as we held in the cases of Ellis v. Johnson, 218 Mo.App. 272, 260 S.W. [1010] 1011, and Sanders v. Sanders, [223 Mo.App. 834,] 14 S.W.2d 458, that such a child needs above all else the tender love and affection of a mother, and, if all else be equal, the child will be given to the custody of the mother. That is the case in this instance. This child is only 5 years of age. These grandparents are excellent people and fond of this child, but that cannot, as the courts hold, take the place of a mother's love and permit them to take precedence over the mother in rearing and providing for the child. The father in this case, if allowed to retain the legal custody of this child, does not expect to take it into his own home, but expects to leave it with these grandparents. The mother will, if so permitted, take the child to her home and be its mother in fact, and it will be constantly under her personal care, and the child will secure all the advantages that come to a child reared, as it should be, in the home of its mother.
"The future good of the child is to be the only end to be sought by us in reaching a conclusion in this case, and, while either parent is able financially to properly feed, clothe, and educate this child, the mother can, and no doubt will, give it that which it needs vastly more than food and clothes, to wit, the tender care and influence of a mother during the period of its growth and development into womanhood. We feel that, under the absolute rules of law by which we are to be governed as applied to the facts developed in this case, the custody of the child should be awarded to its mother, and it will be so ordered."
In Mothershead v. Mothershead, 236 Mo. App. 737, 161 S.W.2d 669, the wife obtained a decree of divorce and custody of a minor child was then awarded to the paternal grandparents. Nearly two years later on the motion of the mother, custody was transferred to her. The father appealed but the Kansas City Court of Appeals affirmed the order. The court found changed conditions in that the custodians of the child had violated the terms of the order granting them custody, by hostility to the mother in her exercise of her right to visit her son, by fostering an estrangement between mother and child, and by permitting the child to be under the influence of his father, who was not fit and competent to exercise such influence. Also there was marked improvement in the physical and mental condition and in the finances of the mother since the divorce. The following language of the court seems to have clear applicability in the case at bar (except that "plaintiff" means "father" as used in this quotation):
"While plaintiff appeared in this case as the opposing party, he made no claim for custody in his own behalf. As the matter was presented to the court it was a contest between a parent and the grandparents over the legal right to custody of the parent's child, and the *779 effect that a change of custody might have upon the welfare of the child.
"As between the parents of a child the right to custody and control is equal, and in a contest between them over such custody the statute, Sec. 1528, R.S.Mo. 1939, Mo.R.S.A. § 1528, provides that the court shall decide only as the best interests of the child itself may seem to require. When one parent has abandoned right of custody or does not claim such right, as in this case, the right of the other parent to custody is paramount to that of all others, unless it is made manifest to the court that the parent claiming custody, `for some reason, is unfit or incompetent to take charge of (the child), or unless the welfare of the child itself, for some special or extraordinary reason, demands a different disposition of it, at the hands of the court.' State ex rel. [Crockett] v. Ellison, 271 Mo. 416, 427, 196 S.W. 1140, 1142, and cases cited." 161 S.W.2d loc. cit. 675.
In view of the cases hereinabove discussed, it is quite clear that a minor child of divorced parents is never to be placed in the custody of a grandparent or any other third person, except as a necessary expedient, usually as a temporary expedient until one of the parents becomes physically and economically capable of having custody, and only as a permanent measure when both parents are unfit to have the custody and care of the child.
When the decree of divorce was granted herein, the plaintiff was not then capable of caring for her daughter Connie. She was only eighteen years of age, and without a home of her own (due principally to defendant's failure to provide adequately for her.) She was in ill health, and in need of surgery, which she could not then afford. At that time, she could not give her child all the care it required, but there is not the slightest suggestion in the record that plaintiff was then unfit, morally or mentally, to have custody of Connie. Had it not been for her physical and financial situation in 1945, there can be no doubt that custody should and would have been granted to her then.
We think the language used by the trial court in the decree of July 28, 1945, is significant and indicates an awareness of the principles of law to be applied. The court, as indicated at the outset of this opinion, while not "awarding" custody of the child to either party, likewise refrained from using the word "award" in its order that the child be in the custody of the grandmother. The court said that the child should "remain" in the custody of Mrs. Selsor, and expressly reserved jurisdiction as to future custody. Even without such express reservation the court would have had continuing jurisdiction as a matter of law. The use of the word "remain" in connection with the declaration of custody must be interpreted as indicating that the court was preserving and continuing the status quo ante, until its further order, but was not making an "award" of custody. The language quoted from the testimony of plaintiff at the divorce trial, supra, reflects plaintiff's understanding that her mother-in-law's custody of Connie was a temporary expedient, wherefore she gave her approval.
Viewing the original decree in this light, the situation before the trial court when the motion to modify came before it was much like the situation in Crooks v. Crooks, Mo. App., 197 S.W.2d 678. Therein the court had made no adjudication of custody in the original decree. On motion to modify, it made a proper order.
It must be remembered that in this case there has never been pleading, proof, or finding that plaintiff is an unfit person to have custody. In defendant's answer in the divorce case, he did not so allege, and the court then found her to be an innocent party. There were two answers filed to plaintiff's motion to modify and neither contains any allegation of plaintiff's unfitness. Despite the lack of pleading, an offer of proof was made, while defendant was on the witness stand, to which objection was sustained. Although the matter is not really before us, we might observe that the *780 offer of proof reflected just as adversely on defendant as he had hoped it would reflect on plaintiff, and perhaps his eagerness to inject such testimony into the case is a greater reflection against him. In any event, the incident could not have been determinative against plaintiff's motion. See Crooks v. Crooks, supra, where there was a similar incident.
As stated, the trial court did not find that plaintiff was an unfit person to have custody of Connie. It awarded custody to her for two consecutive months and for other scattered days in each year, and such an award has been construed as an implied finding of fitness. Williams v. Williams, Mo.App., 211 S.W.2d 740; Tomlinson v. French Institute, supra.
Thus we have here the request of an innocent and injured mother, fit to have custody of her eight year old daugther, moving for a modification of a decree of divorce which had not awarded custody to her but had allowed custody to "remain" in the grandmother with whom the child had lived before the divorce. As already mentioned, she had to plead and prove a change of conditions since the date of the decree. We must now consider whether such has been shown.
Certainly plaintiff showed a marked change in those conditions which might have disqualified her from having custody in 1945 (or, more accurately, rendered her incapable of seeking custody then). She is no longer homeless, but is married for five years to a man who has steady substantial income and has provided a home, and is anxious to have her child live there. She has undergone an operation, whereby her health is improved, although this operation will make it impossible for her to bear more children, thereby increasing her desire for custody of Connie. Age 18 when divorced from defendant, plaintiff was 25 when her motion to modify was tried, and must have matured in judgment and otherwise.
The new facts or changed conditions shown here are much like those described in Armstrong v. Armstrong, supra, which inducd a modification of decree there. This court has said, also, in Lambert v. Lambert, Mo.App., 222 S.W.2d 544, that improved health can constitute an important change of condition.
Moreover, there are factors in the past custody of Connie which constitute new conditions. It will be recalled that Mrs. Selsor moved Connie from Hannibal to Kansas without notifying plaintiff, thereby severing the continuity of contract between mother and child and terminating plaintiff's opportunity of visitation. Later they moved to Moline, Illinois, without notice to plaintiff. By these actions of Mrs. Selsor plaintiff, who did not locate the Selsors until the fall of 1950, was prevented from seeing her child for three years.
It is small wonder that Connie hardly knew her mother, whom she had not seen from the time she was three years old until she was six. This is an undersirable consequence, because it is the policy of the law to preserve the ties of relationship between a child and both its parents; and the blame for it rests upon those who were custodians of the child, not upon plaintiff. Defendant, as a witness, thought it a point in his favor that there was a strangeness between Connie and plaintiff, but such strangeness is a fact weighing against defendants who fostered the development of the situation, Mothershead v. Mothershead, supra, and it must be remedied.
Furthermore, the decree of divorce expressly forbade the removal of the child from the State of Missouri, and thus the removals to Kansas and to Illinois without permission of the court, constituted violation of the terms of the decree. Contrast Middleton v. Tozer, Mo.App., 259 S.W.2d 80, decided by this court on June 16, 1953.
The cases hold that the deprivation by a custodian of a child of a parent's right of visitation is a ground for change of custody, as a changed condition. Rone v. Rone, supra; Olson v. Olson, Mo.App., 184 S.W.2d 768. Concealment of a child *781 from a parent who would like to visit is ground for a modification of provision for custody. Krueger v. Krueger, Mo.App., 107 S.W.2d 967. Unauthorized removal of a child from the jurisdiction is a change of condition which gives reason to modify a decree. Green v. Perr, Mo.App., 238 S.W. 2d 924; Olson v. Olson, supra. Indeed any disregard or disrespect for the terms of a decree is significant, not only as a changed condition, but also as a factor in passing upon the welfare of a child. Williams v. Williams, Mo.App., 211 S.W.2d 740.
Quite properly, under the evidence in this case, and the law as we have recited it, the trial court found that there had been a "material changed condition" since the date of the divorce decree, and it terminated the custody of Mrs. Selsor, the grandmother. As to these aspects of its judgment, now under review, there is no complaint in this court. Plaintiff does not object, of course, to so much of the judgment as accords with her motion, and no other appeal has been taken to this court.
However, the trial court proceeded in its judgment to grant plaintiff custody of Connie for only two months and to grant defendant custody for ten months. Stated otherwise, the trial judge awarded principal custody of Connie to defendant, her father, although he had not asked for it, and thus in largest part, the motion of plaintiff was denied. This is the portion of the judgment which is assailed on this appeal by plaintiff.
We think it quite clear that the learned trial court erred in awarding principal custody of Connie to defendant and that the overwhelming weight of the evidence requires that her custody be awarded to plaintiff (subject to right of visitation by defendant) and the failure to grant the relief sought by plaintiff is an abuse of discretion.
Defendant never has requested, at the time of the divorce decree or on the motion to modify, by pleading or by testimony, that he be granted custody of Connie. While this is not an absolute bar to such an award, 27 C.J.S., Divorce, § 315, it is an important factor in the determination of what is for the best interests of the child. In Tomlinson v. French Institute, supra, it was held that a father's request that the custody of an institution be continued was in effect a renunciation of his rights, 109 S.W.2d loc. cit. 77; and that a pleading so urging negatived his desire for custody, 109 S.W.2d loc. cit. 78, so the mother prevailed. We have a like situation at bar.
The defendant has never contributed to the support of Connie, so far as this record discloses, but has left that burden to others. His present income and ability to provide for Connie are not revealed to the court.
The record is silent also as to the nature and suitability of the living quarters where defendant now resides, the number of rooms, the character of the neighborhood and other factors.
Defendant is now married for the third time, after his second wife obtained a divorce from him. Twice he has been at fault in causing marital failure. His present wife is quite young, only 19. They have a child. She was not asked her disposition as to having Connie in her home and the lack of evidence as to that is important. Lane v. Lane, Mo.App., 186 S.W.2d 47.
On the other hand, plaintiff's husband has expressed his willingness, and plaintiff has an adequate home, where Connie can receive her mother's full attention.
We cannot assume that the trial court intended by its order that Connie should actually remain with Mrs. Selsor, because that would be to attribute to the trial court the unworthy motive of subterfuge, which we will not do. The trial court patently recognized that the law required a modification of the decree to terminate Mrs. Selsor's custody and to vest custody in a parent. The court would not have resorted to a device to evade according due rights to the parents, and we must interpret its language to mean what it says.
*782 Defendant, in any event, would not be bound to keep Connie at Mrs. Selsor's home beyond the time he so desired and Mrs. Selsor would not be required to continue to care for Connie, under the present judgment of the trial court.
The cases hereinabove cited and especially Abel v. Ingram, supra, and Mothershead v. Mothershead, supra, point clearly the way to our conclusion in this case.
"The present happiness of the child is not the governing factor in determining its best interests, but its welfare in the future controls." 27 C.J.S., Divorce, § 309a, p. 1172.
For a brief time, a change may seem difficult, but as said by the Supreme Court in State ex rel. Crockett v. Ellison, supra, concerning a girl of seven years, Connie can soon develop the same character of love for plaintiff that she feels for Mrs. Selsor, and probably a much greater love than she now feels for defendant's present wife. We are convinced that her best interest dictates that her custody should be awarded to her mother, the plaintiff-movant.
Needless to say, the ties of relationship and affection which exists between Connie and defendant and his family must be preserved and encouraged, rather than severed or weakened. There must be no hostility between any persons interested in her, because such hostility will not promote her welfare.
Mrs. Selsor and her husband should always have grateful appreciation from Connie, and even from plaintiff, for the loving care she has devoted to Connie for the past several years. Her contacts with them should be continued as much as possible.
In accordance with the views herein expressed, the judgment of the Hannibal Court of Common Pleas on plaintiff's motion to modify her decree of divorce is reversed and the cause is remanded with directions to sustain plaintiff's motion and to award to her the general care and custody of the minor child of the parties, Connie Bernice Wilson, with provision that defendant may have the custody of said child during the month of July of each year and during one week of the Christmas holiday period, defendant to bear the expense of the child's visits to him and her return to plaintiff.
BENNICK, P. J., and ANDERSON, J., concur.