Barbara Ann COPENHAVER, (now Buck-
walter), Plaintiff-Appellant,

v.

James Arthur COPENHAVER, Defendant-
Respondent.

No. 32042.

St. Louis Court of Appeals.

Missouri.

April 1, 1966.

Harry J. Mitchell, Palmyra, for plaintiff-appellant.

Carstarphen, Harvey & Wasinger, Hannibal, for respondent.

WOLFE, Presiding Judge.

This is an appeal from a decree modifying a divorce decree granted to the plaintiff on November 29, 1958. The defendant was first to move for a modification of the decree as it related to the custody of a daughter born of the marriage. The plaintiff al-

so moved for a modification in respect to the custody of the child. The motions were heard and the court modified the decree granting the general care and custody of the child to her father, the defendant, with certain rights of temporary custody in the plaintiff mother. The plaintiff prosecutes this appeal.

At the time of the original decree the child here in question, whose name is Cynthia, was about two years of age. The parties to the divorce proceeding entered into an agreement as to her custody. It was agreed that the general custody should be in Mr. and Mrs. Omar Carter who were the plaintiff's father and mother, the maternal grandparents of Cynthia. It provided that the plaintiff could visit the child at the Carter's house. It further provided that from Thursday morning to Sunday evening every other week the child should be left with the defendant's parents, Cynthia's paternal grandparents, where the defendant could visit her. On alternate weeks she was to be left with the paternal grandparents from Friday morning to Saturday evening. This agreement was made a part of the decree and the custody of the child was awarded in accordance with it.

The plaintiff mother remarried three months after the divorce and the defendant father had been remarried for over a year at the time of the hearing on the motion to modify the decree. Up to the time of the remarriage of the defendant, Cynthia had been shifted back and forth from the custody of one set of grandparents to the other in accordance with the decree. After the remarriage of her father, she was taken on her weekends to his home instead of the home of her paternal grandparents.

There were no children born of the second marriage of the defendant. He lives with his wife in a new residential district in Palmyra in a home with all modern conveniences. Cynthia has a room of her own while she is there. The house is located seven blocks from the school which she attends. Her mother, the plaintiff, lives seven miles from the school and Cynthia was staying there instead of the home of her maternal grandparents. When she goes to school from her mother's home she goes by school bus. The trip one way takes an hour and a half. The house her mother lives in is an old nine room house and Cynthia shares a room with another girl. The mother's present husband is named Buckwalter and at the time the plaintiff married Buckwalter he had five children by a prior marriage, and one child was born of the present marriage.

Defendant's present wife is employed as a stenographer and clerical worker for the credit bureau in nearby Quincy, Illinois. During the time that Cynthia is in the home of her father, his present wife gives Cynthia nightly baths and prepares and lays out her clothing for the next day. In the morning she sees that Cynthia is dressed for school before she leaves for work. Just three houses from the home of the defendant his sister lives. She has three children, two of whom are girls near Cynthia's age. They walk to school together and when they return home from school Cynthia stays with this aunt and her cousins until her stepmother returns from work at about 5:30.

Mr. Copenhaver, the defendant, is thirty-six years of age and is employed by Cope's Slaughter Company as a meat-cutter and salesman. The company is owned by his father. The evidence was that he is steadily employed, conducts himself soberly, and his family is respected in Palmyra. There was also evidence that Mr. Copenhaver had been convicted of six traffic violations from the year 1950–1961, and two peace disturbance charges in the same period. Mr. Buckwalter, the present husband of the plaintiff, is a building contractor. He does carpentry, plumbing, and other kinds of construction work. He is a hard worker and earns a sufficient amount to provide for his family. Both the present and former husband of the plaintiff were men who drank intoxicants. About four months pri-

or to the hearing on the motion to modify, Buckwalter encountered Copenhaver in a bowling alley and struck him on the head with a beer bottle. Buckwalter pleaded guilty to a charge of common assault on which he was sentenced and placed on probation.

As to the distaff side of the contending couples, the former Mrs. Copenhaver, now Mrs. Buckwalter, did considerable drinking. Her social life seemed to revolve mostly around bowling alleys and night clubs in the Palmyra area. While drinking with her present husband, Buckwalter, in one of the night clubs she got into an altercation with him. It wound up with him getting his face scratched and he carried her out of the place. Buckwalter himself testified that she had marked him up pretty badly and that his face was bleeding.

One witness testified that shortly after her divorce from Copenhaver the present Mrs. Buckwalter told her that the reason she wanted general custody of Cynthia given to her parents was so that she could go out and do anything she pleased and that her husband could not take the child away from her because she was an unfit mother. The plaintiff denied having made the statement and gave the following as her version of the conversation: "She had asked me why I had done it that way. I don't even know myself, and I had said 'Well, one thing about it, as long as she is there, Jim, no matter what he says, or anybody else, they can't touch my baby.' "

The plaintiff was not in good health. She has had trouble with one leg that was injured in an automobile accident. She suffers from a stomach ulcer. At the time of the trial she was under treatment by a physician and was taking tranquilizers. She stated that both she and her husband had given up drinking.

The present Mrs. Copenhaver had no living parents and by reason of this she had been obliged to support and educate her minor brother. She had held not only a full time stenographic position but she had worked as a waitress at night to augment her income sufficiently to send her brother through a business college. She tenderly cares for Cynthia when she is with them. She listens to her prayers and they attend church and Sunday School. She sees that Cynthia is well groomed, plays games with her, reads stories to her, and they genuinely enjoy each other's company.

There was evidence that Buckwalter's home was poorly heated and that the housekeeping was bad. There was also evidence on behalf of the plaintiff to the contrary. There was evidence that Cynthia got along well with the Buckwalter children and they treated her like a sister. Both couples profess love for Cynthia and a desire for her custody.

In addition to the foregoing there was evidence that when Cynthia came to the Copenhaver's her clothing was not clean and her hair needed attention and that the table manners they had attempted to teach her had been neglected while she was away from them.

The court modified the divorce decree by an order which is in part as follows:

"* * * that the general care and custody of Cynthia May Copenhaver be to and in the father, James Arthur Copenhaver, with right in the mother Barbara Buckwalter, for temporary custody the last week end in each month from 5:30 P.M. Friday to 7:00 P.M. Sunday, and the temporary custody in the mother, Barbara Buckwalter, from June 10th each year to August 10th each year, during which period the father, James Arthur Copenhaver, have the right and custody of Cynthia May Copenhaver the last week end of June and the last week end of July from 5:30 P.M. Friday to 7:00 P.M. Sunday; that during the Christmas Holidays Cynthia May Copenhaver is to be in the home of her natural mother, Barbara Buckwalter, four (4) days, every

other year one (1) of those days to be Christmas Day. Further, Cynthia May Copenhaver to be with her natural mother, Barbara Buckwalter, at least on (1) day during the Thanksgiving Holidays each year. During the period of temporary custody of the mother during June and July each year, the defendant James Arthur Copenhaver shall pay to the natural mother Barbara Buckwalter, the sum of $50.00 per month. * * *"

■ The appellant here contends that the court erred in awarding custody to the father and seeks reversal of the decree and the award of general custody to the mother. While a review of such matters on appeal is a trial de novo, on such review this court should not lightly disturb the judgment of the trial court but on the contrary such judgment should be deferred to unless it is apparently in conflict with a clear preponderance of the evidence and a manifest abuse of judicial discretion. Benjamin v. Benjamin, Mo.App., 370 S.W.2d 639; Birrittieri v. Swanston, Mo.App., 311 S.W.2d 364; Long v. Long, Mo.App., 280 S.W.2d 690.

■ The plaintiff contends that because she prevailed in the divorce action she should have been awarded custody of the child. We are cited to Wilson v. Wilson, Mo.App., 260 S.W.2d 770. In that case we stated that the custody was usually awarded to the prevailing party. We also stated in McKenzie v. McKenzie, Mo.App., 306 S.W.2d 588, 1. c. 591: "* * * The fact that either party prevails in a divorce case is not the determining factor in awarding the custody of the children involved. The custody of children should never be awarded as a means of punishing one parent or rewarding the other. The determinative factor in awarding custody is the welfare of the child. * * *"

■ Clearly plaintiff did not want the child at the time of the divorce. While the custody of a child of tender years is usually awarded to its mother (Wilson v. Wilson, supra) that rule gives way, as do all others, when the welfare of the child demands it.

■ It is true that the conduct of the child's father had not in the past been exemplary, but there is no evidence that since his present marriage his conduct has been bad. His present wife appears to be a person of fine qualities who gives Cynthia the love and guidance needed. Added to this the plaintiff is keeping house for six children and her present husband and is in ill health. For these reasons it seems apparent to us that the welfare of the child will be best served by giving her custody to the defendant, as the court decreed, where she will be well cared for in a wholesome atmosphere and close to her school.

■ A motion for an allowance of attorneys fees was filed by the plaintiff and the court awarded $125.00. It is contended by the plaintiff that this is inadequate and that we should make an award that is adequate and reasonable. In Baer v. Baer, Mo.App., 51 S.W.2d 873, 1. c. 880, we stated: "Allowances for counsel fees and suit money for the wife in a divorce action, and in proceedings ancillary thereto, are largely discretionary with the trial court; such discretion to be exercised in view of all the circumstances of the parties. * * * The test is whether the wife is possessed of sufficient means on her own part to prosecute the suit, and if she has such means, then there is no call for requiring the husband to meet those expenses. * * *" No evidence was offered as to the plaintiff's finances, nor was there any evidence as to the extent of the necessary services of the lawyer or the value of such services. It is consequently apparent there is nothing before us which could be examined to determine the propriety of the trial court's discretionary action and the point is there-

fore without merit. Jeans v. Jeans, Mo. App., 300 S.W.2d 870.

The judgment is affirmed.

ANDERSON, J., and DOUGLAS W. GREENE, Special Judge, concur.

RUDDY, J., not participating.