**Anne CARLSON (now Armstrong), Plaintiff Respondent,**

**v.**

**Robert D. CARLSON, Defendant Appellant.**

No. 32282.

St. Louis Court of Appeals.

Missouri.

July 19, 1966.

Marshall & Littmann, Richard M. Marshall, St. Louis, for defendant appellant.

Walter J. Kramer, St. Louis, for plaintiff respondent.

WOLFE, Presiding Judge.

This is an appeal from an order denying a motion to modify a divorce decree. The appealing defendant sought to have the decree modified as it related to the custody of two sons born of the marriage. The plaintiff, who was remarried and had custody of the sons under the decree, also sought to have the decree modified as it related to the temporary custody awarded to the defendant. The order from which the appeal is taken, in addition to denying the defendant's motion, sustained plaintiff's motion by setting the defendant's right of temporary custody at fixed periods of time.

The sole ground upon which the defendant sought to have the decree modified was that the two children were living in an immoral atmosphere because of the character of the stepfather they acquired by their mother's remarriage. She had married a man named Harry Armstrong. The defendant contended that the children's best interest would be served by taking custody from their mother and awarding it to him. The facts upon which he asserts his claim are in substance as follows:

The defendant and the plaintiff in 1958 moved into a house in Florissant near a family named Armstrong. Defendant and Mr. Armstrong were engineers and both worked for the same company. Armstrong boasted about his many extra-marital activities to the defendant Carlson. Carlson testified that he discovered in May of 1961 that Armstrong and the plaintiff were having an "affair" and stated that the plaintiff admitted that she had had sexual intercourse with Armstrong on numerous occasions. This was denied by the plaintiff.

In the same month defendant moved from his home and he said that he did so at his wife's request. Shortly after that the first Mrs. Armstrong, who was then the wife of Harry Armstrong, asked Carlson if he could do something about breaking up the affair between her husband and Mrs. Carlson. The first Mrs. Armstrong was called as a witness for the defendant and testified that she was divorced from Armstrong in 1962 for non-support. She said that Armstrong admitted to her that he had made a mistake. She testified that he said that did not mean to get involved with Mrs. Carlson but it kept on going and there was no end to it. Counsel for plaintiff offered to prove by her that at the time of the hearing here under consideration Armstrong was in arrears in his support payments awarded her at the time of the divorce for the children of their marriage. An objection to the offered proof was sustained by the court. After the separation of the plaintiff and the defendant, in the case here under consideration in May of 1961, the defendant met a divorced woman whose first name was Judith. She had one child by her former marriage. He started going out with Judith. On September 28, 1961 Carlson and his wife were divorced and on that same day the defendant gave plaintiff airplane tickets so that she could return to her family which lived in North Carolina. She lived with them until August 23, 1963, which was the date of her marriage to Armstrong. She stated that she left St. Louis on the day of her divorce because Carlson "had already told me that he loved Judy, wanted to marry her and there was no sense in my staying around."

After plaintiff departed from the state the defendant from time to time indicated that he would like to effect a reconciliation with her. He testified that it was his intention from the time of the divorce up to spring of 1963 to become reconciled with plaintiff. With the prospect of such a reconciliation and remarriage in mind, plaintiff came to St. Louis on February 18, 1963 to see the defendant. At that time the defendant was living in a trailer with his brother in St. Charles. She went there by cab from the airport and found the defendant, his brother and Judith. This was her first encounter with Judith and the two of them talked together. When Judith discovered the purpose of plaintiff's visit and that she was there at the defendant's request, Judith left and returned shortly.

Upon her return she came into the trailer and told the defendant that she would soon be out of the way. She took a bottle of pills from her purse and swallowed them.

They took Judith to a hospital in St. Charles where they pumped her stomach and released her. She denied that she attempted suicide but a physician who had treated Judith was called as a witness by the defendant and he testified that she admitted she had contemplated suicide and had taken compazine.

After this episode the plaintiff returned to North Carolina and the day following the defendant wrote her a letter. It was in the nature of an apology for the events that had occurred, but he again suggested a reconciliation and stated, "I know what I want but I'm still searching for a way to accomplish it. I think as a result of your trip you can understand a little better what I am going thru." Again, in May 1963, he wrote to the plaintiff stating, "First of all I am not going to hold you to anything you agreed to. To be specific, reconciliation. I think I forced you into that decision by threatening to take the kids away from you."

On December 27, 1963, the defendant married Judith. They lived in St. Charles and had a suitable home there. Judith, the present Mrs. Carlson, is employed and works from 8 A.M. to 5 P.M. Living with them is her 4½ year old son by her former marriage. She hires a baby sitter to take care of her son while she works. She said that she would not quit work if her husband was awarded custody of his sons. She stated that she would work for another year as they had some lawyers' fees and furniture payments to make. Her husband's salary was $12,000 a year and he had an income of $1,600 a year from the house he owned and formerly occupied in Florissant. Witnesses were called who testified that the present wife of the defendant bore a good reputation. One witness was the pastor of the Florissant church of which the defendant was a member, and this witness also testi-

fied that Armstrong's reputation had been bad. He did not know what Armstrong's present reputation was and had not seen him since 1961.

The plaintiff denied that her relations with Armstrong had been improper. She stated that she had never had sexual relations with him prior to her marriage. She stated that she sued to divorce the defendant because he came home intoxicated and set a bed on fire with a lighted cigarette. She said that she saw Armstrong in California while visiting a friend there in February of 1962. Around Christmas of 1962 he visited her at her parents' home in North Carolina and stayed there two days. He again visited her at her parents' home in 1963 during his summer vacation and stayed for four weeks. As stated above, they were married in August of that year.

This hearing took place over a year after the marriage of the plaintiff and Mr. Armstrong. The plaintiff testified that she now has a son by her present marriage. They live in Smithfield, Texas. Their home is a commodious brick house suitable for the family. It is on an acre and a half of land and there is a pasture in the back where the boys have their own ponies. Mr. Armstrong is employed as a design engineer by a company near by. The older son is in school and is a straight "A" student. The younger son of the former marriage is not old enough to start school. They are active members of the local Methodist Church which the children attend with them. Their father takes an interest in the boys and has been a good stepfather to them according to the plaintiff. The plaintiff is not employed and devotes her full time to her family.

Upon the foregoing evidence, as we have stated, the court denied the defendant's motion to modify the decree. The original decree did not set a time certain for the children to be in the temporary custody of their father. The plaintiff sought to have the time set out so that there would be no fu-

ture disagreement in regard to it. This the court did by granting the defendant temporary custody each year during the month of August. No point is raised about the modification made regarding temporary custody but the defendant here contends that the court erred in denying defendant's motion to take the general custody from the plaintiff and award it to him.

■ While the review of such matters on appeal is a trial de novo on the record, this court will not lightly disturb the judgment of the trial court but, on the contrary, such judgment will be upheld unless it is apparently in conflict with the clear preponderance of the evidence. Copenhaver v. Copenhaver, Mo.App., 402 .S.W.2d 612; McKenzie v. McKenzie, Mo.App., 306 S.W. 2d 588; Benjamin v. Benjamin, Mo.App., 370 S.W.2d 639.

■ In passing upon such matters all presumption favors the plaintiff on defendant's motion to modify because we start with the fact that the children are where the court placed them. Yount v. Yount, Mo. App., 366 S.W.2d 744; Hurley v. Hurley, Mo.App., 284 S.W.2d 72. The presumption may be overcome by showing of a change of condition that has taken place since the decree but in addition to this the movant must show that the change of condition indicates that a change of custody will best serve the welfare of the child. Birrittieri v. Swanston, Mo.App., 311 S.W. 2d 364.

■ Viewing the bizarre facts presented it would be easy to reach the conclusion that during the marriage of the parties neither of them were constrained in their conduct by any idea of conjugal fidelity. But the defendant rests his case solely on the premise that the children's association with their stepfather will be harmful to them. Regardless of what the stepfather's conduct may have been prior to his present marriage, our concern is his present conduct as it may affect the children. Fortunately one cannot be barred by his past

from reformation and it would seem that Armstrong's conduct has been good since his marriage to the plaintiff. The appellant contends that he was prevented from showing the present character of Armstrong by the action of the court in refusing proof that Armstrong was in arrears in child support for the children of his former marriage. This alone would not make him an unfit stepfather and defendant was therefore not prejudiced by the rejection of the proof offered.

It appears from the evidence that the children are well cared for in all respects by their mother and that their stepfather is considerate and helpful. There is also an absence of proof that they would have such complete care in the defendant's home.

For the reasons stated the judgment is affirmed.

ANDERSON and RUDDY, JJ., concur. cur.