[1] This is a proceeding on motion of the defendant father to modify a divorce decree as respects the custody of a minor child.
[2] The divorce action had been brought by the wife, Bettie Schumm, against her husband, Cloyd C. Schumm.
[3] The parties were married on July 1, 1939, while plaintiff was attending Hannibal-LaGrange College in Hannibal, Missouri. Defendant was employed in the shoe factory in Hannibal at the time.
[4] The child in question, a daughter, Sharon, was born September 14, 1943, and is now six years of age.
[5] When Sharon was about six months old, defendant suggested to plaintiff that she bring an action for divorce. As a matter of fact, defendant frankly admitted that he had desired that his wife should institute such an action against him. The acknowledged fact was that he had become infatuated with another woman; and after resisting his importunities for about a year, plaintiff finally brought an action in the Hannibal Court of Common Pleas, and was awarded a divorce on July 7, 1945. Defendant was not present at the trial, but entered his appearance and joined in a stipulation, which the court adopted and made a part of its decree, that plaintiff should have Sharon's general custody subject to defendant's right of reasonable visitation, *Page 124 
and that defendant should pay plaintiff the sum of $50 monthly for Sharon's maintenance.
[6] Defendant had meanwhile established a residence in Jacksonville, Illinois, where he was employed as manager of the Mills Auto Parts Company; and on July 13, 1945, six days after the entry of the decree of divorce, he was married to the woman with whom he had become infatuated, and since that time has made his home in Jacksonville. Two children have been born of such second marriage, a son now about three years of age, and a daughter now about one year of age. Defendant and his family live in comfortable surroundings; and regardless of what is to be said about the circumstances under which his marriage to plaintiff was disrupted, such evidence as was introduced all indicates that he and his present wife are well respected among their present associates.
[7] After the divorce plaintiff remained in Hannibal with Sharon, and taught school for a couple of years as she had been doing before the decree was granted. Because of the housing shortage she was forced to move on two or three occasions, but at all times was able to have Sharon with her. During the daytime, while plaintiff would be away at school, it was of course necessary that she arrange for Sharon to be cared for by some one other than herself, but there is no pretense that the child was ever neglected or permitted to suffer in any respect. On January 23, 1948, two and a half years after her divorce from defendant, plaintiff married a Mr. Robert O'Donel, who is employed by the Maytag Store in Louisiana, Missouri, some forty miles south of Hannibal. Upon the close of school in the following May, plaintiff moved to Louisiana with her husband; and all the evidence indicated that they too lived in comfortable surroundings and were highly esteemed by their friends and neighbors. Farther south beyond Bowling Green is a community known as Cyrene, where plaintiff's parents, Mr. and Mrs. Walter Gillum, live on a farm of 165 acres. The Gillums are admittedly most excellent people; and while it is outside the record in the case, plaintiff's counsel say in their brief that since the entry of the order in question on this appeal, plaintiff, her husband, and Sharon have taken up their permanent residence in the Gillum home.
[8] It was admitted that defendant, since the entry of the decree, had made his monthly contributions for Sharon's maintenance without fail, and in addition had given her clothes, as well as toys and trinkets of one kind and another. According to plaintiff, all the money contributed by defendant has been invested in bonds, which have been put aside to use at some later date in financing the child's education.
[9] After the divorce, and while plaintiff was still residing in Hannibal, defendant had paid short visits to Sharon on an average of once every three weeks, depending on when he could get away from Jacksonville. It had been his custom to combine his visits to Sharon with business trips to his company's Hannibal store. Whenever it was possible to do so, he attempted to notify plaintiff of his intended visits, but sometimes it was not possible to give her notice in advance. It was his usual practice to call the manager of the Hannibal store and have him notify defendant's mother, a resident of Hannibal, who would then in turn call plaintiff. Incidentally it appears that there had been no friction between plaintiff and defendant's parents, but that instead Sharon had been accustomed to visit them as though nothing had occurred to mar the normal family relationship.
[10] But while defendant, prior to plaintiff's marriage to O'Donel, was apparently permitted to visit Sharon very much at his own convenience, the evidence indicates very conclusively that the arrangement had never worked out satisfactorily. The trouble was that in being compelled to visit the child in plaintiff's home, defendant, if not purposely, then at least unavoidably, had been denied the privacy which was to be desired in such a situation. Even if plaintiff were not constantly in the room as he testified, she was in any event somewhere close by; and it seems to be undenied that he was never permitted to take the child away from home, as for instance, *Page 125 
for a ride in his automobile. In fact, plaintiff testified that she had been advised not to extend him any such privilege. However the breaking point came after plaintiff's marriage to O'Donel, when plaintiff informed him that he would no longer be welcome in her home, and that any future visits would have to be made at the Gillum home to which Sharon would be taken whenever he desired to see her.
[11] On June 12, 1948, defendant filed his motion to modify the decree as respects Sharon's custody, and asked that a new order be entered awarding custody to him on account of a change in conditions. However at the beginning of the hearing defendant modified his motion so as to ask for custody only during the months of June, July, and August. Plaintiff answered, praying the court to specifically fix the time and place for defendant's visitation with the child, and further asking that the child be not taken out of the state at any time.
[12] At the conclusion of the hearing the court modified its decree so as to provide that while plaintiff should retain Sharon's general custody, defendant should be permitted to take her to his own home in Jacksonville during the month of August of each year. On such occasion it was provided that defendant should get the child at the Gillum home at 7:00 p. m. on August 1st, and return her to such home at 7:00 p. m. on August 31st. During the remaining eleven months of the year defendant was to be permitted to visit the child in the Gillum home one day each month between the hours of 1:00 p. m. and 5:00 p. m., with the privilege during said hours to take the child to some nearby village or town, provided she was returned by 5:00 p. m. on that day. Prior to each of said monthly visits, which should not be during school hours, defendant was required to give plaintiff at least twenty-four hours' notice of the day and approximate hour he would arrive. During the month of August each year while Sharon was in defendant's care in Jacksonville, plaintiff and her family were given the right to visit the child for one day at some hotel or other convenient place in Jacksonville out of defendant's presence. It was further provided that the monthly payments of $50 for the child's maintenance should be continued except for the month of August each year while she was in defendant's own home in Jacksonville.
[13] Following the entry of such modified decree, plaintiff filed her motion for a new trial; and the same being overruled, she gave notice of appeal, and by subsequent steps has caused the case to be transferred to this court for our review.
[14] The is no room for controversy about the law of the case.
[15] When a court grants a divorce and restores the husband and wife to the status of single persons, it must necessarily make provision for the subsequent custody of any minor child, to which end it retains jurisdiction during the lives of both parents and until the child attains its majority. Schreckengaust v. Schreckengaust, Mo. App., 219 S.W.2d 244. While in the very nature of things general custody must be awarded to the one parent as against the other, yet the court must respect the rights of both, and at all times recognize that where both parents are proper persons, not only do both of them have the right to reasonable access to the child, but in fact the child's best interests will be served by making it possible for it to receive the benefits to be derived from association with both its parents. Perr v. Perr, Mo.App., 205 S.W.2d 909; Baer v. Baer, Mo.App., 51 S.W.2d 873.
[16] But while neither divorced parent, if otherwise fit, forfeits his or her right to reasonable access to a minor child which has become the ward of the court upon the granting of the decree, still the welfare of the child is always the court's first concern, to which the parents' own wishes must yield if opposed to such welfare. Perr v. Perr, supra. Nor should the awarding of the child's custody be made with the view of punishing one parent or rewarding the other, but only from the standpoint of the best interests of the child; and once the court decides how custody *Page 126 
shall go and what the visitation privileges shall be, it should write such positive directions into its decree that if either parent refuses to obey them, such parent may be held in contempt of court. Perr v. Perr, supra. A provision once made becomes as conclusive as any other order or decree, and can only be modified on a showing of subsequently changed conditions. However there is this to be borne in mind — that while proof of a change in conditions is a prerequisite to the modification of a decree, such proof does not necessarily require a modification, and no modification will be made unless the welfare of the child itself requires a change in the provisions for its custody. Irvine v. Aust, Mo. App., 193 S.W.2d 336.
[17] In this case the only changed conditions are that Sharon is older, being now six years instead of twenty-two months of age as she was at the time the divorce was granted; that both parties have remarried; that plaintiff has moved from Hannibal to Louisiana or that vicinity; and that because of her remarriage defendant is no longer welcome to call at her home in availing himself of his privilege of visitation. There is no denial that plaintiff's remarriage has made it necessary that there be some change in the arrangements for defendant to have access to the child. However the question is whether the lower court has found the proper solution in directing that Sharon be turned over into defendant's temporary custody and be taken to his home in Jacksonville during the month of August of each year, or whether instead due regard for the child's welfare requires that some other way be found for the exercise of defendant's right of visitation.
[18] We cannot escape the conclusion that the taking of Sharon to Jacksonville during the month of August of each year would at the present time be distinctly against her best interests. We do not say this because of any fear that defendant and his wife would be at all lacking in their efforts for her care and comfort while she was with them. However it must be remembered that Sharon is now but little more than a baby. She has been with plaintiff constantly throughout her entire life, and to take her away from plaintiff and turn her over to people, one of whom is a total stranger to her, might well be expected to bring on an emotional disturbance calculated to leave its permanent marks. As a matter of fact, if the court's modified order were to stand, it would mean for all practical purposes that Sharon would be taken away from her own mother and turned over largely to the custody of defendant's present wife during each August, since it would necessarily be the wife who would have the care of her while defendant was away each day at his employment. Such an arrangement would at best be in the nature of an experiment, and an experiment is not to be indulged with a trust of this character. Irvine v. Aust, supra. Clearly such a plan would not react to Sharon's advantage, and the only plausible reason for attempting it would be that it would serve defendant's own convenience.
[19] It seems to us that the evidence offers a far more logical solution of the problem, which would afford defendant a reasonable right of visitation while safeguarding Sharon's personal welfare in all respects. This would be to permit him to visit his child at the home of the Gillums at such convenient times as might be determined upon by all concerned, and free from plaintiff's interference or intrusion upon him. His relations with the Gillums are still very friendly, and they both say that he would be entirely welcome to call at their home for such a purpose. In fact this was the very plan the court adopted for all the months of the year except August, and we think it is the plan that should be followed for all twelve months of the year until Sharon is older and better prepared to adjust herself to new surroundings among strange people. Defendant's obligation for the payment of $50 a month for Sharon's maintenance is not in controversy, and there should be no change in such respect.
[20] The details of such an order cannot be arbitrarily fixed by this court, but should be left to the lower court in collaboration with counsel for the respective parties. *Page 127 
[21] It follows that the order appealed from should be reversed and the cause remanded for further proceedings in the lower court not inconsistent with the views herein expressed. The Commissioner so recommends.