Marcella Mae McCOY (formerly Marcella Mae Briegel) (Plaintiff), Appellant,

v.

Theodore BRIEGEL, Defendant.

No. 29881.

St. Louis Court of Appeals.

Missouri.

Sept. 3, 1957.

Rehearing Denied Sept. 30, 1957.

**32**

William Waye, Jr., St. Charles, for appellant.

William L. Hungate, Troy, amicus curiae.

MATTHES, Judge.

This action involves the custody of plaintiff's son, Richard D. Briegel. Plaintiff has appealed from an order overruling her motion to modify and denying her custody of Richard. Inasmuch as an attack is made against the validity of the original order which denied plaintiff custody, it is essential that the proceedings antedating and following the questioned order be reviewed.

On December 22, 1947, following service on the defendant by publication, plaintiff was divorced from the defendant by a judgment rendered in the Circuit Court of Lincoln County, Missouri. Instead of disposing of the question of custody of the three minor children at the time the decree was entered, the court "ordered that the matter of custody of the children born of the marriage, to-wit: Daniel Guy Briegel, Richard D. Briegel, and Barbara Kay Briegel be held in abeyance until further order of this court". Thereafter, and on May 14, 1948, the court acted by denying plaintiff custody of her children. That order (under attack in this proceeding) reads:

"The Court being more fully advised in the premises concerning the custody of the children, Richard, Barbara Kay and Danny and upon consultation with the Child Welfare Officer of St. Charles County, Court denies the custody of the mother in said children. Court finds that these children are homeless and have been neglected by their mother and she cannot properly care for them. Court orders said children put into the custody of the St. Charles County Social Security Commission for procuring foster home care for said children. Said St. Charles County Social Security Commission is to report to this Court where they have placed said children which shall be in a home of reputable persons of good moral character and approved by this Court."

Following this action and pursuant thereto the Child Welfare Officer of St. Charles County placed Richard D. Briegel (the subject of this proceeding) in the home of Mr. and Mrs. Ray Dowell of Bowling Green, Missouri, and Barbara Kay in another home. On June 8, 1948, the court approved the action of the Child Welfare Officer as shown by its order: "Court approves the placement of these children and the plaintiff is ordered to provide the proper care and maintenance for said children, Richard and Barbara Kay."

Plaintiff took action on April 21, 1949, to regain custody of the two children who had been placed in other homes by filing a motion to modify the original decree. In that motion plaintiff alleged that since the granting of the divorce, and on October 9, 1948, she had married Ernest McCoy; that they were residing in St. Charles, Missouri; that her husband's earnings were $55 a week and that she and her husband were able to properly support, provide for, and maintain her children. She alleged

that she was being deprived of a right to visit her son Richard because of lack of co-operation on the part of the "St. Charles County Social Security Commission". Plaintiff prayed the court to cancel the orders of May 14, 1948, and June 8, 1948, and to award her full custody and control of Richard D. and Barbara Kay. Apparently a hearing was held on this action but the record before us does not disclose the date thereof or the evidence offered. It was not until July 28, 1950, that the court formally acted on the motion, at which time we find this order was rendered:

"Now again the Court takes up the matter under submission; and the Court does now award the custody of Daniel Guy Briegel and Barbara Kay Briegel to Marcella Mae Briegel, (now Marcella Mae McCoy) the last decree of the Court in the matter of divorce of Marcella Mae Briegel vs. Theodore Briegel is modified to the extent of this order only; and further, the Child Welfare Office of St. Charles County, Missouri, is relieved of further custody of the said Daniel Guy Briegel and Barbara Kay Briegel. This order is to in no wise affect or in any wise modify the last decree of this Court in any other particular relative custody of other child or children mentioned in the decree."

Plaintiff again instituted proceedings on February 20, 1954, designed to regain custody of Richard D., at which time she filed the "motion to modify the divorce decree" which is the basis for the instant proceeding. Service was obtained upon defendant by publication. In this motion plaintiff alleged that the order of May 14, 1948, placing the children in the custody of the "St. Charles County Social Security Commission" for placement in homes is null and void and of no effect. The alleged reason for the invalidity of the May 14th order is that the court was without jurisdiction in the divorce case to find that "said children were homeless and neglected by their mother and that she cannot properly care for

them * * *". Plaintiff's pleaded theory was that the order of May 14, 1948, could be made only in a proceeding instituted pursuant to and by authority of §§ 211.310 to 211.510 RSMo 1949, V.A.M.S., designed to provide a method for dealing with neglected and delinquent children. There is a further allegation in the motion that plaintiff "is now the wife of Ernie McCoy, who is gainfully employed and is willing and able to care for all of said children including said Richard Briegel * * *; that petitioner's said husband is willing to adopt all three of said children, including said Richard Briegel, if the custody of said Richard Briegel is awarded to her."

Raymond R. Dowell and Alva, his wife, filed their application requesting the court to permit them to intervene in the cause. Therein they alleged as a reason for said request that they had legal custody of Richard and that they may be adversely affected by the decision of the court. Simultaneously with the filing of their application to intervene the Dowells filed a motion to dismiss plaintiff's motion to modify as well as their answer thereto. In their answer the Dowells pleaded that they have had custody of Richard since May 14, 1948, and since said date and long prior thereto plaintiff had neglected to afford Richard proper care and maintenance. The court denied the application to intervene upon the authority of Schumacher v. Schumacher, Mo.App., 223 S.W.2d 841, and Wilson v. Wilson, Mo.App., 260 S.W.2d 770. In ruling the application the court further stated:

"The future custody of the child is the issue now to be determined by the Court. The defendant father is in default. So the issue is not whether his custody will be given to the father, but whether custody should be restored to the mother or otherwise determined. The Court believes that this issue should be fully developed by evidence more so than would ordinarily be done in an ex parte proceeding. To this end, the Court believes that the appoint-

ment of an amicus curiae could aid the Court by a fuller presentation of the facts pertaining to the welfare of the child."

The court thereupon appointed Hon. William L. Hungate, a member of the bar, as amicus curiae and directed him to present to the court "such matters of fact and law as he deem of general interest to the Court herein, and otherwise show cause, if any there be, why plaintiff's motion to modify the decree of divorce herein should not be granted". Mr. Hungate not only accepted the appointment but it should be said that he conscientiously and ably complied with the court's directions. He cross-examined witnesses for plaintiff, and offered and examined witnesses—all in an effort to bring forth facts which would assist the court in resolving the vital and paramount question of whether there had been a change in circumstances and conditions requiring modification of the existing custodial provision. The amicus curiae pursued the cause in this court by filing a comprehensive brief and by presenting an oral argument. After the trial, which was held on September 9, 1955, the Honorable George P. Adams, Special Judge, the regular judge of the circuit having disqualified himself, considered memoranda submitted by counsel for plaintiff, and by the amicus curiae. In denying the motion to modify the trial court stated that the only issue that had been presented by counsel for plaintiff in his memorandum was the validity of the order of May 14, 1948. The court, expressly limiting its consideration to that issue, found against plaintiff, who, as stated, has brought the case to this court for review.

Although plaintiff, through able counsel, urges with much insistence that regardless of any and all circumstances, she, as the mother of Richard, is entitled to his custody, she is equally sincere and insistent in contending that the order of May 14, 1948, which denied her the custody of her children is wholly null and void. The argument is advanced that the finding "that these children are homeless and have been neglected by their mother and she cannot properly care for them" was not only unauthorized in a divorce proceeding, but that it "could have been made only after proceeding as provided for in Sections 211.360, 211.370, 211.380, and 211.390, RSMo 1949" (relating to delinquent and neglected children) ; and because there was "no hearing at that time or prior thereto concerning the rights of the plaintiff and custody of her children". We have carefully considered the questioned order or judgment in the light of applicable principles and have concluded that all of the elements essential to the validity of the order were present at the time of rendition thereof.

■ It is, of course, a well-settled rule that a judgment rendered by a court having no jurisdiction is a mere nullity, and will be so held and treated whenever and for whatever purpose it is sought to be used or relied upon as a valid judgment. 49 C.J.S. Judgments §§ 19(a) and 449; In re Buckles, 331 Mo. 405, 53 S.W.2d 1055; Coombs v. Benz, 232 Mo.App. 1011, 114 S.W.2d 713. And it is elementary that if a judgment is really void any kind of a proceeding to cancel it would be proper, McIntosh v. Wiggins, 356 Mo. 926, 204 S.W.2d 770, loc. cit. 772. A judgment that is void because the court rendering it did not have jurisdiction of the subject matter may be attacked collaterally by any one directly interested therein. Rippe v. Sutter, Mo.Sup., 292 S.W.2d 86, loc. cit. 89. Therefore, this action in the nature of a motion to modify the divorce decree wherein the relief prayed for is that the court "modify its decree of divorce of December 22, 1947, and award to her the custody of said minor child Richard Briegel" is sufficient to test the validity of the order of May 14, 1948. It is fundamental that a judgment to be valid must be based on, and in conformity with, recognized principles of law. Thus it is essential to the efficacy of a judgment that the court have jurisdiction of the persons and of the subject matter. 49 C.J.S. Judgments §§ 19(b) and 19(c); Crabtree

v. Aetna Life Ins. Co., 341 Mo. 1173, 111 S.W.2d 103, loc. cit. 108; and State ex rel. National Lead Co. v. Smith, Mo.App., 134 S.W.2d 1061, loc. cit. 1069. In addition, it is necessary to the validity of a judgment that the court shall have jurisdiction of the question which its judgment assumed to decide; and jurisdiction to render a judgment for the particular relief which the judgment undertakes to grant. Where such jurisdiction does not exist, the judgment is void. 49 C.J.S. Judgments, § 19(d); State ex rel. National Lead Co. v. Smith, supra; Mesendieck Grain Co. v. Folz, 227 Mo.App. 24, 50 S.W.2d 159, 161.

■■ Turning to the situation before us we find that not only were the parties to the divorce action properly in court, but jurisdiction to litigate, determine, and adjudicate the question of the welfare and custody of the children was present. Indeed, the court was laboring under a mandate to "make such order touching the * * * care, custody and maintenance of the children, or any of them, as, from the circumstances of the parties and the nature of the case, shall be reasonable * * *". Section 452.070 RSMo 1949, V.A.M.S. Minor children of divorced parents become the wards of the court which grants the decree; and that court's jurisdiction to determine where custody of the children shall go vests in such court to the exclusion of all others, Morgens v. Morgens, Mo.App., 164 S.W.2d 626; Salkey v. Salkey, Mo.App., 80 S.W.2d 735; Conrad v. Conrad, Mo.App., 296 S.W. 196; Ex parte Sangster, 295 Mo. 49, 244 S.W. 920; S——— v. G———, Mo. App., 298 S.W.2d 67, and such jurisdiction continues during the lives of both parents and until the children attain their majority. Schumm v. Schumm, Mo.App., 223 S.W.2d 122, 125; Bell v. Catholic Charities of St. Louis, Mo.App., 170 S.W.2d 697.

■ The contention that the action of the court on May 14, 1948, was a nullity and void because the order recited that "these children are homeless and have been neglected by their mother and she cannot properly care for them * * *" is wholly untenable. It cannot be disputed that a child under the age of 17, who is "homeless" may be a "neglected child" and the subject of a proceeding instituted in accordance with and pursuant to the provisions of Chapter 211 RSMo 1949, V.A.M.S. (See Section 211.310.) This does not mean, however, that a court, in a divorce action, having jurisdiction of the subject matter and the parties, becomes *divested* of jurisdiction to adjudicate and judicially determine the question of the welfare of the children of the litigants simply because it is ascertained that the children have been neglected and are homeless.

■ Having obtained the divorce plaintiff was conclusively presumed to be the innocent and injured party. Rone v. Rone, Mo.App., 20 S.W.2d 545. As a corollary to this principle is the rule that custody of children is usually awarded to the party who prevails in a divorce action. Wilson v. Wilson, supra, 260 S.W.2d 770, loc. cit. 776. So under normal circumstances plaintiff herein would have been entitled to a custody award, particularly because the defendant, father of the children, was in default and was neither challenging plaintiff's right to their custody nor making an effort to gain custody of them, nevertheless it must be remembered that the court was bound and obligated to be influenced by the best interests and welfare of the children, which is always the paramount and supreme object in resolving the matter of custody of minor children. Rone v. Rone, supra; Pope v. Pope, Mo.App., 267 S.W.2d 340; Ballew v. Ballew, Mo.App., 288 S.W. 2d 24; Graves v. Wooden, Mo.App., 291 S.W.2d 665. Obviously this compelling consideration motivated the court, acting within reasonable bounds, to take the precautions that it did towards ascertaining the situation, conditions, and surroundings of plaintiff and her ability to properly and adequately care for, support, and maintain her offspring, State ex rel. McKenzie v. La Driere, Mo.App., 294 S.W.2d 610, loc.

cit. 613, and to enter the order denying plaintiff custody of her child.

■ We recognize that a void order or judgment cannot be brought back to life, and if the May 14th order was void and a nullity when rendered and spread upon the record it remains so. But it is of some significance that the theory which is now so forcefully expounded by plaintiff was advanced by her for the first time approximately six years after the so-called void order had come into existence and formed a link in the chain of proceedings centered around the Briegel children. Plaintiff had abided by and lived under that order during that period of time. It is apparent, indeed a matter of record, that in April, 1949, plaintiff recognized the validity of the order, for then, in her motion to modify, she relied entirely upon changed facts and circumstances in an effort to persuade the court to alter the very order now assaulted as having no force and effect.

■ In view of what has been said, we hold that when the court rendered its judgment denying plaintiff custody of her children and making such order touching their care, custody, and maintenance as the court concluded was reasonable under the circumstances, it was vested with jurisdiction of the persons, of the subject matter and jurisdiction of the question which its judgment assumed to decide; and so holding it necessarily follows that plaintiff's first point must be disallowed.

■ This brings us to the assignment that the court erred in refusing to change the custodial provision of the original order by awarding plaintiff custody of her son Richard. In so contending plaintiff advances the unequivocal and unyielding argument that "as the mother of the boy involved in this case" she "had the paramount right to his custody, unless the evidence showed that she was not a fit person for his custody. And the evidence in this case showed that she was a good woman and the court below has already given

her the custody of two of her three children." It should be pointed out that in the motion to modify plaintiff did not plead new or changed circumstances and conditions. But for the fact that this issue was actually litigated and submitted to the court, we would not accord plaintiff's present assignment notice or consideration. It is now recognized that in a case of this kind where the issue of the welfare and best interests has been submitted to the court, that court should of necessity make such orders as are proper to accomplish the child's welfare. S——— v. G———, supra, Mo.App., 298 S.W.2d 67, loc. cit. 74; Clark v. Clark, Mo.App., 300 S.W.2d 851, loc. cit. 852; Wonneman v. Wonneman, Mo.App., 305 S.W.2d 71. As stated in S——— v. G———, supra, 298 S.W.2d loc. cit. 74, the court may award custody even though no request therefor has been made in the petition or motion. Confronted as we are with an appeal from an order in a proceeding to modify, we must review the whole record and decide the case on its merits, and according to the best interests of the child. Wilson v. Wilson, supra, 260 S.W.2d 770, loc. cit. 773, and cases there cited. Therefore even though the trial court failed to rule on the issue of welfare, we shall determine that phase of the controversy.

■ The principle is firmly embedded and universally applied that the natural right of a parent to the custody of a minor child should never be denied unless it is made clear to the court that the parent for some strong and cogent reason is unfit or incompetent to be entrusted with the care of the child, *so that the welfare of the child itself demands a different disposition at the hands of the court.* Ex parte De Castro, 238 Mo.App. 1011, 190 S.W.2d 949; Bell v. Catholic Charities, Mo.App., supra, 170 S.W.2d 697; Cox v. Carapella, Mo. App., 246 S.W.2d 513; In re Wakefield, Mo.Sup., 283 S.W.2d 467; Wilson v. Wilson, supra, 260 S.W.2d 770. While the foregoing principle may not be lightly disregarded, we are mindful of our duty to

determine whether the moving party, in this case the plaintiff, has carried her burden of establishing by a preponderance of the credible evidence [Graves v. Wooden, supra, 291 S.W.2d 665, loc. cit. 667; Armstrong v. Armstrong, Mo.App., 185 S.W.2d 845, 847] new or changed facts and circumstances which require a shift of the custody *in order that the best interests of the child involved will thereby be promoted.* S——— v. G———, supra; Graves v. Wooden, supra; Wilson v. Wilson, supra; Armstrong v. Armstrong, supra; Schumm v. Schumm, supra; Lewis v. Lewis, Mo. App., 301 S.W.2d 861, loc. cit. 863.

■ It is necessary that we review the evidence to ascertain whether plaintiff has met the requirements cast upon her by the applicable law.

Richard, the second of the three Briegel children, was born September 10, 1945. Since May, 1948, the Dowells have not only been entrusted with his full care and custody but have carried the responsibility of maintaining him. Plaintiff concedes that neither she nor her present husband has furnished any part of Richard's support or the necessities of life. The Dowells' home, free of debt, consists of a modern five-room house situated upon one and one-tenths acres of land in Bowling Green, Missouri. At the time of the hearing in September, 1955, Mr. Dowell was 45 and Mrs. Dowell 43 years of age. Neither had been married before. They have no children of their own. Mr. Dowell is manager of the Chevrolet and Allis Chalmers Farm Machinery Agency in Bowling Green, Missouri, which is owned and operated by Mr. Phillip Schaper. According to the latter's testimony, Dowell's annual earnings, consisting of a salary and commission, were approximately $6,000, but in 1955 he anticipated the commissions alone would amount to $7,000. Mr. Dowell was a member of the Board of Aldermen of Bowling Green, Missouri, having been elected to that office. He is active in the First Christian Church in the city of his residence,

holding the office of deacon. Mrs. Dowell has no occupation other than being a housewife. She has devoted all of her time to taking care of the home and the child here involved. Nine individuals, including the pastor of Mr. Dowell's church; the Principal of the Bowling Green Elementary School; the Judge of the Probate and Magistrate Courts of Pike County; a neighbor; the owner and operator of a trucking business; the President of the St. Louis Wholesale Drug Company; the President of the Farmers Bank of Bowling Green, Missouri; an insurance agent; and Mr. Dowell's employer testified in behalf of the Dowells and attested to their good character and their reputation for integrity and morality. All of the witnesses also gave testimony touching upon the relationship existing between Richard and the Dowells. By this testimony it was conclusively and convincingly established that Richard is happy, completely adjusted to his home and its environments, well-behaved, healthy in appearance, presenting a clean body and clothing, and above all, manifesting a deep affection for both Mr. and Mrs. Dowell. Richard is known in and about Bowling Green as "Dickie" Dowell. By that name he is enrolled in the Bowling Green School and the First Christian Church and Sunday School. According to the report cards, from the first to the fourth grades, inclusive, Richard's attendance record has been nearly perfect, and he has been a superior student scholastically and in his behavior. Both Mr. and Mrs. Dowell are deeply attached to the boy, indeed, they indicated at the hearing a desire to adopt him as their own child.

On the other hand, plaintiff and her husband established that they are fit and proper persons, morally and otherwise, to take care of Richard. The present is Mrs. McCoy's third marriage. She married one Marvin Curry when she was eighteen years of age, and to that union one child was born, who is living with his mother and Mr. McCoy. The Curry marriage ended in a divorce which was obtained by plain-

tiff. Thereafter she married Briegel, and, as stated, that marriage terminated in a divorce and the circumstances which set this litigation in motion. When this case was tried plaintiff was working as an assembly riveter at the American Car & Foundry Company in St. Charles, Missouri, where she earned take-home pay of $75 a week. Mr. McCoy was employed by General Motors at its Chevrolet plant in St. Louis, Missouri, and his take-home pay was about $82 per week. The McCoys' home in St. Charles, Missouri, which was not quite debt free, has seven rooms, four of which are occupied by Mr. and Mrs. McCoy and three of plaintiff's children. The remaining three rooms are occupied by Mr. McCoy's mother, who was eighty years of age in September, 1955. During the school term the children leave for school before Mrs. McCoy departs for her day's work, and when they return from school in the afternoons they are taken care of by Mr. McCoy's mother, unless McCoy has arrived home from his work which is frequently the case. During the summer or vacation months the children are either taken to the home of a sister of Mrs. McCoy, who lives on a farm two or three miles from St. Charles, Missouri, or the sister comes to the McCoy home and takes care of the children. This is a daily arrangement. The McCoys are members of and regularly attend the First Christian Church in St. Charles, Missouri. Mrs. McCoy's children are regular in their attendance of the Sunday School conducted by the same church. Six persons, including the minister of their church, testified in behalf of the McCoys, and in general their testimony related to the manner in which plaintiff and her husband have treated Mrs. McCoy's three children who are living with them. From the record it is clear that the children are happy, and that the environment of the McCoy home was conducive to the welfare and best interests of her son by the first marriage and the two Briegel children. With respect to Richard, Mrs. McCoy's position was that the only reason she was placed in the unusual situation of being denied the custody of her children following the divorce was because of economic reasons; that upon marrying McCoy and establishing her home in St. Charles, Missouri, she immediately took action to regain Richard's custody. Mr. McCoy also stated that he was not only willing to assume the responsibility of caring for and maintaining the boy, but that he was willing to adopt him as his own child.

Our solution of the unwelcome and unpleasant task of adjudicating and determining the question of who shall have the custody of Richard is fraught with difficulty and heavy responsibility. We are deeply conscious and keenly aware that we are dealing not only with the tender relation and affection that a mother has for her child, but the future course of an innocent boy. While it is generally recognized "* * * that no other love is quite so tender, no other solicitude quite so deep, no other devotion quite so enduring as that of a mother", Ellis v. Johnson, 218 Mo. App. 272, loc. cit. 280, 260 S.W. 1010, loc. cit. 1012, it is also a matter of common knowledge that when a married couple has been entrusted with the care and custody of a child of tender years, not their own, and proceed to nurture and minister to his needs in sickness and in health, there comes into existence a deep and abiding love and solicitude for, and devotion to, the child. These noble qualities manifest themselves by the same sympathetic, patient, and understanding attitude and the same sacrificial care and guidance which natural parents bestow upon their child.

 Having in mind that the paramount and controlling issue and principle is the best interests and welfare of Richard, and that even plaintiff's natural right as his mother to his custody must yield if it is apparent that a transfer of custody at this time would adversely affect Richard's future course and the furtherance of his welfare, we are driven to the conclusion that plaintiff's motion to modify must be denied. It is to be remembered that on July 28, 1950, following a hearing upon plaintiff's prior

motion to modify, the court determined that the custodial provision of the original order, in so far as it affected Richard, should not be disturbed. That became a final judgment, subject, of course, to further proceedings to modify. The evidence before us is not sufficient to constitute proof of new facts, circumstances, or conditions requiring a transfer of custody in order that the best interests and welfare of the child in question may be promoted. " * * * we must bear in mind that it is not sufficient simply to show *some* change in circumstances but that modification is justified and permitted only upon proof of changed conditions affecting the welfare of the children to a substantial or material extent [Application of Shreckengaust, Mo.App., 219 S.W.2d 244, 247(3); Hawkins v. Thompson, Mo.App., 210 S.W.2d 747, 751–752(3)] and in a beneficial manner". Hurley v. Hurley, Mo.App., 284 S.W.2d 72, loc. cit. 73, 74. In the instant case the only change that is demonstrated by the record is the passage of seven years of time since the question of Richard's custody was last judicially determined. Passage of time and the increase in the age of the child do not constitute changes sufficient, in and of themselves, to justify modification. Fordyce v. Fordyce, Mo.App., 242 S.W.2d 307, 314; Hurley v. Hurley, supra.

It stands undisputed that through the careful, considerate, patient, and loving guidance of the Dowells through the nearly ten of Richard's twelve years, he has developed into a normal, happy, intelligent, disciplined, and devoted boy. At the hands of Mr. and Mrs. Dowell, whom he considers his parents, he is receiving religious training, and is acquiring an education. To remove Richard at this stage of his life from the environments which are a vital part of his existence, and require him to start all over again, so to speak, could have a disastrous effect on his future course. We are unwilling to say that this drastic step should be taken.

▮▮▮ There remains the contention that the court exceeded its authority in per-

mitting the amicus curiae to offer testimony tending to establish that the child's welfare and best interests require that his custody continue to remain with Mr. and Mrs. Dowell; in allowing the amicus curiae a fee of $50 for services he rendered, and in taxing the allowance as costs against plaintiff. We find no merit in either point. Mr. Hungate was not, as is frequently the situation, appointed as a friend of the court upon his request or the request of Mr. and Mrs. Dowell. He was not actually representing a private client with a personal interest in the ultimate outcome of the case. Here, the court appointed Mr. Hungate and specifically directed him to present to the court "such matters of fact and law as he deem of general interest to the Court herein, * * *". The rule is well established that in a proper case an amicus curiae may be appointed to aid and assist the court by the performance of certain services which are necessary to guide the court to a proper conclusion. 3 C.J.S. Amicus Curiae § 3(b); 2 Am.Jur., Amicus Curiae, § 3. The trial court obviously entertained the belief that a member of the bar, acting as amicus curiae, could aid that court as well as the reviewing court in reaching a just and proper result. We cannot say that in appointing Mr. Hungate as amicus curiae the court abused its discretion. Having appointed Mr. Hungate who, as stated, rendered services which have proved beneficial to a solution of the questions presented, the court properly awarded him compensation and directed it to be paid by plaintiff, who is the party responsible for the situation that prompted the court to make the appointment. This precise question was passed upon and settled by this court in the case of In re Phi Fathers Educational Ass'n, 239 Mo.App. 1105, 203 S.W.2d 885. Therein it is pointed out that where an attorney labors as the court's representative in upholding its dignity and authority, there can be no compensation allowed for his services, because in such a case the attorney is acting as an officer of the court. But where, as here, the attorney is appointed by the court to perform

certain labors which may be necessary to aid the court with respect to some private litigation pending before it, he has the right to be awarded compensation for the services he may render in the capacity of amicus curiae.

The judgment of the trial court is affirmed.

RUDDY, P. J., and ANDERSON, J., concur.