M——————— (Plaintiff), Appellant,

v.

M——————— (Defendant), Respondent.

No. 29899.

St. Louis Court of Appeals.

Missouri.

May 6, 1958.

J. O. Swink, Farmington, for appellant.

Robert A. McIlrath, Flat River, for respondent.

**PER CURIAM.**

This case involves the custody of Glenda Kathleen, age 10, and Michael Roy, age 6, the children of the parties; and the payment of the amount claimed to be due and unpaid on the judgment for support of the children.

When plaintiff was divorced from defendant on January 7, 1955, she was given custody of the children, and a judgment for $70 per month, payable semimonthly, for their support and maintenance. On February 7, 1957, defendant filed his motion to modify, based on a change in conditions, wherein he prayed that the custody of the children be transferred from plaintiff to defendant. On March 20, 1957, plaintiff caused a general execution to be issued out of the Office of the Circuit Clerk of St. Francois County, Missouri, commanding the Sheriff of that County to collect the sum of $1,715 from the defendant, being the amount purportedly due on the judgment. On April 6, 1957, plaintiff filed motion for suit money and attorney's fee to enable her to defend the motion to modify, and on April 18, 1957, defendant filed what he chose to term a motion to "correct execution," but which could more properly be denominated a motion to quash execution in part, and which we shall consider as such. As a basis for the relief sought in the latter motion, it was alleged that payments had been made to plaintiff for which defendant had not received credit, and that actual custody of the children, following the divorce, had

been in defendant and defendant's mother for long periods of time, and that payments due under the judgment had been made to defendant's mother.

At the outset of the trial, and by agreement of the parties, the court, in effect, ordered the three motions taken up and tried together. That procedure was pursued. Following conclusion of the hearing, the court modified the original decree by transferring custody of Glenda and Michael from plaintiff to defendant, subject to reasonable visitation rights by plaintiff, and by relieving defendant of the obligation to pay any amount to plaintiff for support of the children; allowed an attorney's fee of $125; found that since the rendition of the divorce decree, the actual custody of the childen had been in plaintiff for a period of only seven months, that during the remainder of the time custody was in the paternal grandparents; that pursuant to the agreement between plaintiff and. defendant, the latter had paid his parents (children's grandparents) the amount necessary for their support, that for the seven months plaintiff had the children the sum of $490 accrued to her of which $452 had been paid leaving $38 due plaintiff on the judgment; and quashed the execution as to all but $38 sought to be collected thereby. From the judgment thus rendered plaintiff has brought the case to this court for review.

With respect to the court's action in modifying the custodial provision of the decree, since the basic point presented is that the evidence failed to establish a change of conditions and circumstances requiring a transfer of custody, we shall review the pertinent testimony bearing on this question.

Following the divorce, plaintiff and the children lived with plaintiff's mother in Farmington, Missouri, for a "short time," after which the children with their mother resided for about two weeks in another house in the same city. Then plaintiff, with Michael, moved to an apartment in Desloge, Missouri, but Glenda, the older child, was taken to the home of defendant's parents who resided in Esther, Missouri. A sister of defendant, who resides with her parents, enrolled Glenda in the Esther School. In the latter part of May or first part of June, 1955, Michael was also taken to the home of the paternal grandparents and plaintiff moved to St. Louis, Missouri. In July, plaintiff took both children and retained them in her custody until about September 14 when they were returned to the same grandparents. At approximately the same time Glenda and Michael were enrolled in the Esther School, and they continued to live with their grandparents until the school term ended in 1956, when plaintiff took the children to her mother's home and resided with them there until the latter part of August of the same year. At that time they were returned to the home of defendant's parents where they remained until the hearing on the motions which occurred in April, 1957; however, on nearly every week end from Christmas, 1956, plaintiff had the children with her.

Defendant remarried in February, 1956, and thereafter resided about a block from the home of his parents. On occasions both children and particularly Michael were in his home. The evidence reveals that defendant's present wife, Virginia, has a child by a former marriage who was six years of age in March, 1957, and defendant has a child, four months old at the time of the trial, by his present wife. By the uncontradicted testimony we learn that no unusual conflict, discord or friction exists between Glenda and Michael on the one hand and defendant's present wife and her daughter on the other; in fact, defendant's wife, Virginia, expressed a desire to have both of the children in her home permanently and as members of the family. She also assured the court that she was willing to assume and discharge her share of the responsibility of providing and furnishing proper guidance, religious training and those other intangibles essential to the development and growth of good character. As to the physical aspect

of defendant's home, no contention is made as to the adequacy thereof or that the addition of Glenda and Michael as members of the family would discommode anyone. The facts are that defendant resides in a modern, five-room house with full basement, and defendant expressed the intention of converting a large porch into two additional rooms so that adequate sleeping space would be provided for all.

Plaintiff, by her testimony, did not seriously challenge the accuracy of the testimony relating to the actual care and custody of the children, as above summarized. She sought to justify her failure to keep the children on her inability to work, occasioned, so she said, by a back injury.

■ The morals of the respective parents properly became the subject of inquiry, as an important factor in determination of the motion to modify, Hurley v. Hurley, Mo.App., 284 S.W.2d 72, 74. As to this phase of the case, it was conceded by plaintiff that subsequent to the divorce, and on July 15, 1955, she gave birth to a child in a hospital in the City of St. Louis, Missouri. While plaintiff stated under questions by her counsel that defendant was the child's father, she admitted under cross examination that defendant had executed a paper in connection with the adoption of the child by another party in which it was stated that defendant was not the father. And defendant's present wife testified, that plaintiff had informed her that defendant was not the father of the child.

■■ The basic, general rules for consideration in after-divorce proceedings affecting the transfer of custody of children from one parent to the other are so clearly defined and established that it is hardly necessary to restate them. Fundamentally, there must be proof of new facts, circumstances or conditions requiring a change of custody in order that the best interests and welfare of the child or children in question may be promoted. It is insufficient to establish *some* change in circumstances, but modification is justified and permitted only upon proof of changed circumstances or conditions affecting the welfare of the children to a substantial or material extent, McCoy v. Briegel, Mo. App., 305 S.W.2d 29, 39.; Application of Shreckengaust, Mo.App., 219 S.W.2d 244, 247(3); Hawkins v. Thompson, Mo.App., 210 S.W.2d 747, 751–752(3), and in a beneficial manner, McCoy v. Briegel, supra; Hurley v. Hurley, Mo.App., 284 S.W.2d 72, 73–74. And, as contended by plaintiff, the burden is on the moving party to establish by a preponderance of the credible evidence the existence of new or changed facts and circumstances requiring a shift in custody. McCoy v. Briegel, supra; Graves v. Wooden, Mo.App., 291 S.W.2d 665, 667; Armstrong v. Armstrong, Mo. App., 185 S.W.2d 845, 847.

■ The record conclusively and convincingly establishes that the legal custody of Glenda and Michael should be taken from plaintiff and awarded to defendant. There has been a material and substantial change in the pattern of the lives of both parents. After a comparatively short period of time following the original decree, plaintiff found herself in a position where she was unable to provide a suitable home for the children. Unfortunately for them, this resulted in their being shuttled between plaintiff's several places of abode and the paternal grandparents. Plaintiff made no showing that the situation would be any different if the original custodial provision is permitted to stand. Indeed, the inference is clear from her own testimony that she had no intention in the forseeable future of changing the existing arrangement. Thus, she is desirous of retaining legal custody of the children so that she may, at her will, again shift their physical custody back and forth between herself and the grandparents, or perhaps others. In our judgment this is not conducive to the best interests and welfare of the children.

There was not the faintest suggestion in the trial court or here that defendant or his present wife are unfit morally or otherwise to furnish and provide a proper home and environment for the children. The contrary being true, we must hold, particularly in view of the age of the children, that their welfare will be promoted by transferring their custody to defendant.

■ Plaintiff also contends that the trial court improperly quashed the execution as to all but $38 sought to be collected thereunder. In taking this action the court found that between the date of rendition of the decree and the time the execution was issued on March 20, 1957, actual custody of the children was in plaintiff for intermittent periods aggregating seven months and that during the remainder of the period such custody was in the paternal grandparents; that pursuant to an agreement between the parties, and with the consent of plaintiff, defendant had made payments to the grandparents. These findings are supported by the record. There was a direct conflict in testimony of plaintiff and defendant as to whether there was an agreement that the support payments were to be made to the grandparents. In this situation we shall defer to the trial judge who was in a more advantageous position to judge of the credibility of the parties.

Plaintiff's position seems to be that since the judgment was in her favor, it could be satisfied only by paying the amounts due thereunder to her regardless of who had the actual custody of the children.

■ Whether the father is entitled to credit on the arrears of a child support judgment for payments made on behalf of the child depends on the circumstances under which the payments are made. In a contempt proceeding the father was denied credit for *voluntary* payments made to the child, Fischer v. Fischer, 164 Ga. 81, 137 S.E. 821. In Fussell v. State, 102

Neb. 117, 166 N.W. 197, L.R.A.1918F, 421, the court refused to give credit on a support judgment for gifts of small sums of money made to the child; and in Openshaw v. Openshaw, 86 Utah 229, 42 P.2d 191, the court rejected the father's claim for credit for money paid directly to the children.

On the other hand, under certain factual situations the mother may not collect the amount that has accrued on a judgment for support. 27 C.J.S. Divorce § 321(b), p. 1228, considers and deals with the general question in this language: "Where an order required a divorced husband to make periodical payments for the support of a child, and the husband had the custody of and supported the child for several years, the wife could not recover payments for support during that period, *nor during the period third persons were supporting the child,* * * *." (Italics supplied.) See also 17A Am.Jur., Divorce and Separation, § 876. The subject received treatment in Steckler v. Steckler, Mo.App., 293 S.W.2d 129, where the Springfield Court of Appeals considered the father's claim for credit on a judgment for payments made direct to his daughter. There the court stated, loc. cit. 134: " * * * there are numerous cases which hold that where 'compulsion of circumstances' makes necessary the direct expenditures by the husband, equitable considerations will require credit for such expenditures 'which constitute a substantial compliance with the spirit and intent of the decree.' Jackson v. Jackson, 306 Ky. 715, 209 S.W.2d 79; Schlom v. Schlom, 149 Miss. 111, 115 So. 197; Mooty v. Mooty, 131 Fla. 151, 179 So. 155; Mason v. Mason, 148 Or. 34, 34 P.2d 328; State ex rel. Meins v. Superior Court of Skagit County, 159 Wash. 277, 292 P. 1011." The court also observed that in those cases which hold the court has jurisdiction to credit arrears on a support judgment when equitable principles demand it, "the annotators are reluctant

to draw and state any general rule as to when such credit may be allowed," and premised the holdings in a majority of cases on the express or implied consent of the mother, who occupies the position of parent-trustee, to the payment of the judgment in manner other than directly to her.

The purpose of a judgment having the characteristics of the one under consideration is to provide support and maintenance for the children named in the decree, the real beneficiaries of the judgment, Section 452.070 RSMo 1949, V.A.M.S.; Cervantes v. Cervantes, 239 Mo.App. 932, 203 S.W.2d 143, 146(7),—it is not for the personal benefit of the person in whose name the judgment stands. With this basic principle as the pole star, there is no merit in plaintiff's contention of error in regard to the court's action in partially quashing the execution. For it was conclusively established that plaintiff voluntarily surrendered physical custody of the children to the paternal grandparents, and there was evidence from which we find that plaintiff expressly agreed that the support payments should be made to the grandparents, who were caring for the children. Since defendant discharged the obligation imposed on him by the judgment and the children received the benefits of the payments made by him to the grandparents, it would be contrary to all sense of justice to require him to make payment again to plaintiff for her personal enrichment. Since the record demonstrates a "substantial compliance with the spirit and intent of the decree," we approve the court's action in partially quashing the execution.

Accordingly, the judgment is in all respects affirmed.

RUDDY, P. J., ANDERSON, J., and JOHN K. REGAN, Special Judge, concur.