**Constance Sue GLAVES, Plaintiff-Respondent,**

v.

**Lloyd Newton GLAVES, Defendant-Appellant.**

No. 36028.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 29, 1975.

Zenge & Smith, Canton, for defendant-appellant.

William Alberty, Edina, Dennis Davidson, Hannibal, for plaintiff-respondent.

DOWD, Acting Presiding Judge.

Action by plaintiff-wife for divorce and child custody. Defendant-husband filed a cross-bill praying that he be granted the divorce and awarded custody of the two children, ages 5 and 6. The trial court granted the defendant's cross-bill for divorce, but made the children wards of the circuit court; custody of the children was awarded to the wife during the week and to the appellant on the weekend. The court further ordered that the two children be subject to the supervision of the Department of Welfare of the State of Missouri. Appellant appeals from only that part of the court's decree which makes the children wards of the court and gives respondent custody during the week.

Appellant's first point on appeal is that the court erred in making the children of the marriage wards of the court. Appellant argues that the trial court has no authority to make the children wards of the court unless a proceeding is held under Chapter 211, RSMo 1969, V.A.M.S.[1] This contention finds no support in the estab-

---

1. Chapter 211 provides a procedure whereby neglected, abandoned or unsupported children can be made wards of the juvenile court.

lished case law concerning the disposition of child custody incidental to a decree of divorce.

 The minor children of divorced parents become wards of the court which grants the divorce decree. While the experienced trial judge specifically made the minor children wards of the court, the children would have been so by operation of law. State v. Weinstein, 413 S.W.2d 178[1] (Mo. banc 1967). "'The power to adjudge custody, while statutory, is an inheritance from the ancient ecclesiastical courts, and under our statutes when the court has once acquired such jurisdiction the child becomes its "ward" and the court has jurisdiction to award custody "to the exclusion of all others."'" Allen v. Allen, 433 S.W.2d 580, 583 (Mo.App.1968). When minors are properly before a court for any purpose and their welfare is involved, they become wards of that court. State v. Ferriss, 369 S.W.2d 244, 249 (Mo. banc 1963).

 Appellant's complaint is that the trial court made no findings of neglect, abandonment, or failure to support as would be required under a proceeding brought in the juvenile court under Chapter 211. The answer to this contention is found in McCoy v. Briegel, 305 S.W.2d 29 (Mo.App.1957). In *McCoy*, also a divorce action, the court denied custody to either parent, instead placing the children under the custody of the county Social Security Commission for the purposes of finding foster homes for the children. Plaintiffs in *McCoy* argued that such an order could only be made under Chapter 211 RSMo 1949, which provided proceedings for "neglected" children. The court answered this contention by saying that the fact that Chapter 211 provides a procedure whereby neglected children can be made wards of the juvenile court does not mean that a court, "in a divorce action, having jurisdiction of the subject matter and the parties, becomes *divested* of jurisdiction to adjudicate and judicially determine the question of the welfare of the children of the litigants simply because it is ascertained that the children have been neglected" and that a proceeding may also lie under Chapter 211. *McCoy* at 35. Indeed, a proceeding under Chapter 211 would take precedence over, and be paramount to, the incidental jurisdiction the divorce court has over minor children. State v. Weinstein, *supra*.

 Thus, since the court had proper jurisdiction over the custody of the children and since no court had paramount jurisdiction, the court's order making the children wards of the court under the supervision of the Division of Welfare was well within the court's authority and not in conflict with Chapter 211.

Appellant's second point on appeal concerns the scope of appellant's redirect examination of certain witnesses. During the trial of this case appellant called several witnesses to testify in his behalf as to appellant's honesty, sobriety and reputation in the community. On cross-examination these same witnesses were asked about respondent's fitness as a mother. The witnesses all gave a positive answer on the question of whether respondent was a good mother.

Thereafter, appellant sought to re-examine these witnesses to discover if they were aware of respondent's admitted adultery and respondent's neglect in failing to provide dental care for the children. Objections to this line of inquiry were sustained. Appellant's contention is that he should have been allowed to test each witness's knowledge of the respondent's character for the purposes of impeaching the credibility of these witnesses.

 We agree with appellant's contention that he was improperly restrained in his examination of these witnesses. These witnesses were character witnesses called to testify to appellant's good character. When respondent went beyond the scope of the direct examination and sought from these witnesses their opinion of re-

spondent's character, respondent made them her witnesses on that issue. Appellant then is allowed to cross-examine such a witness as to whether the witness knows of specific acts of misconduct. Such an inquiry is "permissible to test the knowledge, the trustworthiness, and accuracy of the witness's information, the basis for his judgment, candor, and credibility." State v. Johnigan, 494 S.W.2d 23[4, 5] (Mo. 1973). A character witness may be cross-examined as to good faith rumors and as to facts within the witness's knowledge discreditable to the person to whose good reputation the witness has testified. State v. Richardson, 364 S.W.2d 552, 555 (Mo. 1963).

 Our conclusion that the cross-examination of these witnesses was unduly restricted does not mean we are required to reverse the judgment. Since this is a divorce action, our duty is to review all the evidence and reach our own conclusion as to the proper judgment to be entered. Boyd v. Boyd, 459 S.W.2d 8, 11 (Mo.App. 1970). We are to enter such judgment as the trial court should have entered. Heibel v. Heibel, 366 S.W.2d 37, 41 (Mo.App. 1963). Furthermore, we are to consider only the evidence as the court below should have considered. Coleman v. Coleman, 318 S.W.2d 378, 382 (Mo.App.1958).

In the case before us appellant was allowed to make offers of proof as to what each witness would have testified to. The substance of the offer of proof was that each witness would have changed his or her opinion of respondent's character had the witness known of the specific acts of conduct sought to be cross-examined on. For the purposes of our review we will accept the offer of proof as true and consider the credibility of each witness as impeached thereby.

 This brings us to appellant's final point that the court erred in not granting full custody to appellant. Appellant argues that he is able to provide the children with a better environment than respondent. The trial court's findings involving the custody of minor children are not to be lightly regarded and easily disturbed and we will defer to those findings unless we are firmly convinced that the welfare of these children require some other disposition, bearing in mind, of course, the fact that the trial court has continuing jurisdiction to make such further orders as future circumstances warrant. Jennings v. Jennings, 379 S.W.2d 159, 163 (Mo.App. 1964); C v. B, 358 S.W.2d 454, 461 (Mo. App.1962).

We have thoroughly examined the record in this case. The trial court was faced with a difficult decision. There was substantial evidence that appellant is a man of good moral character, that appellant has a great concern for the welfare of these children and could provide a home superior to the one in which the children now live. However, appellant is not at home during the day and would have to hire "sitters" for the children.

 On the other side of the coin, respondent is able to be with the children for a substantial part of the day. The children have also grown up with two of respondent's children of another marriage and it probably would not be wise at this time to sever this relationship. Add to this the fact that both children are of tender years and that one child is a little girl. The trial court was not in error in holding that the best interest of the children require their mother to have custody of the children during the week.

In arriving at this conclusion we are not unmindful of the unfavorable character evidence of the respondent that was produced below. We do not find that evidence to justify a different conclusion in this case. Not all unfavorable character evidence justifies a finding of unfitness as a parent. This does not preclude the trial court, of course, from re-examining the environment of these children from time to time and the court may in the future find a change in

circumstances requiring a modification of its custody order. For our purposes, however, we do not find the evidence when taken as a whole compels a result different from that reached by the trial court.

The judgment is affirmed.

WEIER and RENDLEN, JJ., concur.